Christopher G. Kelly
Marisa Marinelli
HOLLAND & KNIGHT LLP
31 West 52nd St.
New York, New York 10019
(212) 513-3239
*Attorneys for Defendants Washington Square Financial, LLC d/b/a/ Imperial Structured Settlements, Imperial Finance & Trading, LLC, and Imperial Holdings, Inc.*

UNITED STATES DISTRICT COURT FOR
SOUTHERN DISTRICT OF NEW YORK

MICHAEL LAFONTANT,

        Plaintiff,

v.

WASHINGTON SQUARE FINANCIAL, LLC
d/b/a IMPERIAL STRUCTURED
SETTLEMENTS, IMPERIAL FINANCE &
TRADING, LLC; IMPERIAL HOLDINGS, INC.;
and ANDREW LEVINE,

        Defendants.

Case No. 14-CIV-9895

**DEFENDANTS WASHINGTON SQUARE FINANCIAL, LLC d/b/a
IMPERIAL STRUCTURED SETTLEMENTS, IMPERIAL FINANCE &
TRADING, LLC AND IMPERIAL HOLDING'S INC.'S MOTION TO DISMISS**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... ii

STATEMENT OF FACTS ...................................................................................................... 2

     A.    THE STRUCTURED SETTLEMENT TRANSACTIONS ........................................ 2

     B.    THE AGREEMENTS TO ARBITRATE ................................................................... 3

     C.    LAFONTANT ASSERTS CLAIMS RELATING TO AGREEMENTS ..................... 3

ARGUMENT

THE COURT MUST DISMISS THE COMPLAINT IN ITS ENTIRETY UNDER THE MANDATORY ARBITRATION AGREEMENTS ................................................ 4

        1.    Arbitration Clauses Under the Federal Arbitration Act ..................................... 5

        2.    Gateway Questions Must Be Answered by Arbitrators if Parties Agreed to Arbitrate Under American Arbitration Association Rules ................................ 5

        3.    The Court Should Dismiss the Complaint Because its Factual Allegations Touch Upon Matters Covered by Agreements Containing a Broad Arbitration Clause .................................................................................................................. 7

        4.    Non-Signatories May Invoke the Arbitration Provision ................................. 10

CONCLUSION ....................................................................................................................... 11

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*ACE Capital Re Overseas Ltd. v. Central United Life Ins. Co.*,
  307 F. 3d 24 (2d Cir. 2002)..........................................................................................7

*Aurechhione v. Schoolman Transp. Sys., Inc.*,
  426 F.3d 635 (2d Cir. 2005)..........................................................................................4

*Bell Atlantic Corp. v. Twombley*,
  550 U.S. 544 (2007)......................................................................................................4

*Buckeye Check Cashing, Inc. v. Cardegna*,
  546 U.S. 440 (2006)......................................................................................................7

*Campaniello Imports v. Saporiti Italia S.p.A*,
  117 F.3d 655 (2d Cir. 1977)....................................................................................9, 10

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002)..........................................................................................4

*Collins & Aikman Products Co. v. Building Sys., Inc.*,
  58 F.3d 16 (2d Cir. 1995).........................................................................................8, 9

*Contec-Corp. v. Remote Solution Co., Ltd.*,
  398 F.3d 205 (2d Cir.2005)...........................................................................................6

*Gwathmey Siegel Kaufman, et. al v. Rales*,
  518 Fed. Appx. 20, 2013 WL 1810959 (2d Cir. May 1, 2013) ....................................6

*Halebian v. Berv.*,
  644 F.3d 122 (2d Cir. 2011)..........................................................................................4

*Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*,
  246 F. 3d 219 (2d Cir. 2001).........................................................................................5

*Imperatore v. Putnam Lovell NBF Sec. Inc.*,
  2006 WL 64824 (S.D.N.Y. Mar. 15, 2006) ..................................................................7

*In re Salomon Inc. Shareholders' Derivative Litigation*,
  68 F.3d 554 (2d Cir. 1995)............................................................................................8

*JLM Industries, Inc v. Stolt-Nielson, SA*,
  387 F. 3d 163 (2d Cir.2004)......................................................................................5, 8

*John Hancock Life Ins. Co. v. Wilson,*
    254 F.3d 48 (2d Cir. 2001)..................................................................................5

*Louis v. Dreyfus Negoce, S.A. v. Blystad Shipping & Trading Inc.,*
    252 F. 3d 218 225 (2d Cir. 2001)........................................................................8

*Makarova v. United States,*
    201 F.3d 110 (2d Cir. 2000)................................................................................4

*Merrill Lynch & Co. Inc v. Allegheny Energy, Inc.,*
    500 F.3d 171 (2d Cir. 2007)................................................................................9

*Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.,*
    460 U.S. 1 (1983)................................................................................................5

*Nowak v. Ironworkers Local 6 Pension Fund,*
    81 F. 3d 1182 (2d Cir. 1996)...............................................................................4

*O'Keefe Architects, Inc. v. CED Constr. Partners, Ltd.,*
    944 So.2d 181 (Fla. 2006)...................................................................................6

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.,*
    388 U.S. 395 (1967)............................................................................................8

*Robinson Brog Leinward Greene Genovese & Gluck, P.C. v. John M. Quinn & Associates, L.P.,*
    No. 12-2915-cv, 2013 WL 1707897 (2d Cir. April 22, 2013)............................7

*Sidell v. Structured Settlement Investments,*
    No. 3:08-cv-00710 (VLB), 2009 WL 103518 (D. Conn. Jan. 14, 2009)..........10

*Smith Barney Shearson, Inc. v. Sacharow,*
    91 N.Y.2d 39 (1977)...........................................................................................6

*Williams v. Citibank, N.A.,*
    565 F.Supp.2d 523 (S.D.N.Y. 2008)...................................................................4

**STATUTES**

9 U.S.C.
    § 2......................................................................................................................5

**OTHER AUTHORITIES**

AAA Rule R-1(a).............................................................................................................7

AAA Rule R-7(a).............................................................................................................7

Fed. R. Civ. P. 12(b)(1) and 12(b)(6) ...................................................................1, 2, 4, 11

www.adr.org ................................................................................................................................7

Case 7:14-cv-09895-CS   Document 15   Filed 02/05/15   Page 5 of 16

Defendants, WASHINGTON SQUARE FINANCIAL, LLC d/b/a IMPERIAL STRUCTURED SETTLEMENTS ("Imperial Structured Settlements"), IMPERIAL FINANCE & TRADING, LLC ("Imperial Finance & Trading, LLC"), and IMPERIAL HOLDINGS, INC. ("Imperial Holdings") (collectively the "Imperial Defendants"), by and through their undersigned counsel and pursuant to the provisions of Fed. R. Civ. P. 12(b)(1) and 12(b)(6), move this Court for an Order Dismissing Plaintiff's Complaint (ECF No. 1) because Plaintiff agreed to submit the disputes at issue here to mandatory arbitration, including questions regarding the arbitrability of the claims asserted in the Complaint.

Distilled to its core, Plaintiff Michael Lafontant ("Lafontant") has filed this action in a blatant attempt to circumvent the mandatory arbitration agreements which he entered into with Defendant Washington Square Financial d/b/a Imperial Structured Settlements ("Imperial Structured Settlements"). In an effort to distract the Court from the fact that this matter should be pending in front of an arbitrator and not this Court, Lafontant conspicuously omits any reference in his Complaint to the provisions he agreed to requiring arbitration of all claims arising out of or related to the structured settlement transactions that are the subject of this matter. Lafontant's actions not only fly in the face of his obligations under the contractual documents he executed, but are also a waste of the Defendants' and the Court's resources inasmuch as the parties will be forced to expend needless time, fees, and costs on litigation that was wrongfully filed.

This motion seeks dismissal of each and every claim asserted in the Complaint pursuant to the arbitration agreements. This includes the gateway questions of arbitrability, including the existence, validity and enforceability of the arbitration provisions themselves. The Imperial Defendants have already commenced arbitration proceedings against Lafontant to address the

disputes between the parties, including but not limited to Lafontant's breach of his obligations under the structured settlement transaction documents he executed.[1]

## STATEMENT OF FACTS[2]

### A.    THE STRUCTURED SETTLEMENT TRANSACTIONS

From November of 2011 through May of 2012, Lafontant entered into six (6) different transactions in which he agreed to transfer certain structured settlement payment rights to Imperial Structured Settlements. The dates of the agreements to transfer the structured settlement payment rights were as follows: November 14, 2011, November 19, 2011, November 20, 2011, December 23, 2011, March 9, 2012 and May 10, 2012.[3] The structured settlement payment rights that Lafontant transferred to Imperial Structured Settlements included periodic payments to which Lafontant was entitled pursuant to an underlying settlement of various tort claims. In exchange for the transfer of these structured settlement payment rights, Lafontant has been paid over $450,000.

---

[1] *See* Declaration of Marisa Marinelli, Esq., dated February 5, 2015, submitted herewith ("Marinelli Decl."), at ¶3, Ex. 1 (a true and correct copy of the Demand for Arbitration and Statement of Claims (the "Demand")). The Imperial Defendants deny any and all allegations of purported wrongdoing asserted by Lafontant in the Complaint. Given the mandatory arbitration agreements in effect, Imperial will bring to light the many misrepresentations made by Lafontant in the arbitration proceeding that has been commenced. To that end, the Imperial Defendants have made detailed claims in the Demand addressing Lafontant's misrepresentations and lack of credibility. The Demand claims compensatory and punitive damages against Lafontant for his actions.

[2] As explained herein, the Court is not required to accept the facts as alleged in the Complaint as true under Fed. R. Civ. P. 12(b)(1).

[3] Although Lafontant entered into six (6) transactions to transfer his structured settlement payments rights to Imperial Structured Settlements, his Complaint appears to only challenge three of those transactions dated December 23, 2011, March 9, 2012 and May 10, 2012. *See* Compl. at ¶50, ECF No. 1 at 11 and Prayer for Relief, ECF No. 1 at 26-27. True and correct copies of the December 23, 2011, March 9, 2012 and May 10, 2012 Absolute Sale and Security Agreements are attached to the Marinelli Decl. as Composite Ex. 2.

2

### B. THE AGREEMENTS TO ARBITRATE

Lafontant executed Absolute Sale and Security Agreements (the "Agreements") for each transaction. The Agreements include an arbitration provision requiring that all disputes arising out of or relating to the Agreements be submitted to mandatory arbitration as follows:

### ARBITRATION

> Any and all controversies, claims, disputes, rights, interests, suits or causes of action arising out of or relating to this Agreement and the negotiations thereto, or the breach thereof, shall be settled by binding arbitration administered by the American Arbitration Association. The demand for arbitration shall be filed in writing with the other party to this Agreement and with the American Arbitration Association offices in the state of your residence. The arbitration shall be held in the largest city in the state of your residence. The arbitration shall be held before a single arbitrator selected in accordance with the Commercial Arbitration Rules of the American Arbitration Association in effect at the time that the demand for arbitration is filed . . . .

*See, e.g.,* Agreement dated December 23, 2011 (the "December 23, 2011 Agreement") at p. 2-3, a true and correct copy of which is attached to the Marinelli Decl. as Ex. 2. Accordingly, Lafontant agreed to mandatory arbitration for each transaction.

### C. LAFONTANT ASSERTS CLAIMS RELATING TO AGREEMENTS

Lafontant's Complaint alleges the following six (6) counts: negligence (Count I), gross negligence (Count II), fraudulent misrepresentation (Count III), fraud (Count IV), fraud as to the 2012 transactions (Count V), and Conversion (Count VI), each of which relies on the purported conduct of Imperial Structured Settlements as it relates to the structured settlement transactions. The Complaint also makes references to documents which Lafontant signed and executed, which include the arbitration agreement. *See* Compl. at ¶32, ECF No. 1 at 9. All of the claims asserted by Lafontant directly relate to the Agreements containing the mandatory arbitration provision.

3

## ARGUMENT

### THE COURT MUST DISMISS THE COMPLAINT IN ITS ENTIRETY UNDER THE MANDATORY ARBITRATION AGREEMENTS

"A [claim] is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the court lacks the statutory or constitutional power to adjudicate the [claim]." *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F. 3d 1182, 1187 (2d Cir. 1996). In construing a Rule 12(b)(1) motion to dismiss, the party claiming subject matter jurisdiction "bears the burden of proving subject matter jurisdiction by the preponderance of the evidence." *Aurechhione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). On a Rule 12(b)(1) motion, the court may consider evidence outside of the pleadings. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). When deciding a motion to dismiss brought under a Rule 12(b)(6), a court must accept all well-pleaded factual allegations as true, but "entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 55 (2007). In addition, "[t]he [C]ourt need not accept as true an allegation that is contradicted by the documents on which the complaint relies." *Williams v. Citibank, N.A.*, 565 F.Supp.2d 523, 527 (S.D.N.Y. 2008) (citations omitted).

In deciding a 12(b)(6) motion, the Court may "properly consider 'matters of which judicial notice may be taken, or documents either in plaintiff'[s] possession or of which plaintiff[ ] had knowledge and relied on in bringing suit.'" *Halebian v. Berv.*, 644 F.3d 122, 130 n.7 (2d Cir. 2011) (citations omitted). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,'" which renders the document 'integral' to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). Here, the claims asserted in the Complaint hinge on the Agreements, which are the operative contracts providing for the transfer of the underlying structured settlement payments and include mandatory arbitration provisions. To that end, the Complaint necessarily relies on the Agreements that are attached hereto.

1. **Arbitration Clauses Under the Federal Arbitration Act**

The Federal Arbitration Act ("FAA") provides that an agreement that provides for resolution of disputes thereunder through arbitration "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. The United States Supreme Court has adopted a longstanding "liberal federal policy favoring arbitration agreements." *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). In light of this policy, it is well established that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id; see also Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*, 246 F. 3d 219, 226 (2d Cir. 2001) (holding that the FAA reflects a strong federal policy favoring arbitration as an alternative means of dispute resolution."); *John Hancock Life Ins. Co. v. Wilson*, 254 F.3d 48, 59 (2d Cir. 2001) (determining that even if a dispute's arbitrability proves to be "ambigu[ous]," a court is "compelled to construe the provision in favor of arbitration.").

2. **Gateway Questions Must Be Answered by Arbitrators if Parties Agreed to Arbitrate Under American Arbitration Association Rules**

In construing a motion to dismiss based on an arbitration clause, a district court must address the following issues:

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes the some, but not all of the claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings.

*JLM Industries, Inc v. Stolt-Nielson, SA*, 387 F. 3d 163, 169 (2d Cir.2004) (citations omitted).

Acknowledging the FAA's general presumption that the threshold issue of arbitrability should be resolved by the courts, the Second Circuit has held that:

5

> [T]he issue of arbitrability may only be referred to the arbitrator if there is *clear and unmistakable evidence* from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator.

*Contec-Corp. v. Remote Solution Co., Ltd.*, 398 F.3d 205, 208 (2d Cir.2005) (citations omitted) (emphasis supplied).[4]

The Second Circuit has held that where, as here, "parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *Id*; *see also Gwathmey Siegel Kaufman, et. al v. Rales*, 518 Fed. Appx. 20, 2013 WL 1810959, *1 (2d Cir. May 1, 2013) (holding that "[t]he Agreement is not ambiguous, and by incorporating the American Arbitration Association ("AAA") rules the parties agreed to have the arbitrators decide arbitrability." ).

Here, the parties incorporated the AAA rules into the mandatory arbitration provisions. *See* Marinelli Decl., Ex. 2 (December 23, 2011 Agreement at p.3) ("Any and all disputes . . . arising out of or relating to this Agreement . . .shall be settled by binding arbitration administered by the American Arbitration Association."); *see also id.* ("The arbitration shall be held before a single arbitrator selected in accordance with the Commercial Arbitration Rules of the American

---

[4] The Agreements are governed by Florida law. *See* Marinelli Decl. at Ex. 2 , December 23, 2011 Agreement at Section F ("Except as otherwise required by applicable statutory law, this Agreement shall be governed by and interpreted in accordance with the law of the state of residence of the Seller on the date of this Agreement."). As of the date of all the Absolute Sale and Security Agreements, Lafontant was a resident of Florida. *Id.* Florida law (as well as New York law) follows the same standard as federal law with respect to who determines arbitrability: generally, it is a question for the court unless there is a clear and unmistakable agreement to arbitrate. *See O'Keefe Architects, Inc. v. CED Constr. Partners, Ltd.*, 944 So.2d 181, 188 (Fla. 2006); *Smith Barney Shearson, Inc. v. Sacharow*, 91 N.Y.2d 39, 45-46 (1977).

Arbitration Association in effect at the time that the demand for arbitration is filed . . . .").[5] The AAA Rules provide: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the _existence, scope or validity of the arbitration agreement_." AAA Rule R-7(a) (emphasis added) Based on the well-settled Second Circuit precedent set forth above, the agreement to arbitrate evidences the clear and unmistakable intent by the parties to arbitrate the gateway questions of the "_existence, scope or validity of the arbitration agreement_."[6] By incorporating the AAA rules into the arbitration agreements at issue, the parties have agreed to have the arbitrator decide the threshold issue of arbitrability. As such, this Court should dismiss the Complaint based on the arbitration provision.[7]

### 3. The Court Should Dismiss the Complaint Because its Factual Allegations Touch Upon Matters Covered by Agreements Containing a Broad Arbitration Clause

An arbitration agreement applies to a dispute where it touches on matters covered by the contract in question. *See ACE Capital Re Overseas Ltd. v. Central United Life Ins. Co.*, 307 F. 3d 24, 33-34 (2d Cir. 2002) (holding that language typical of broad arbitration provisions encompasses any disputes that touch matters covered by the contract in which the arbitration provision is found); *see also Robinson Brog Leinward Greene Genovese & Gluck, P.C. v. John M.*

---

[5] To the extent the parties did not specifically elect the Commercial Rules of the AAA in the Agreements, those Rules would still apply. *See* AAA Rule R-1(a) ("[T]he parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association (hereinafter AAA) under its Commercial Arbitration Rules or for arbitration by the AAA of a domestic commercial dispute without specifying particular rules."). The Commercial Rules of the AAA can be found at www.adr.org.

[6] The United States Supreme Court has held that "regardless of whether the challenge is brought in federal or state court, a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006).

[7] The Court may dismiss claims when the scope of an agreement containing an arbitration clause "encompasses all of Plaintiff's claims before this court, and there is therefore no reason to stay the proceedings pending arbitration." *Imperatore v. Putnam Lovell NBF Sec. Inc.*, 2006 WL 64824, *6 (S.D.N.Y. Mar. 15, 2006).

7

*Quinn & Associates, L.P.*, No. 12-2915-cv, 2013 WL 1707897, *2 (2d Cir. April 22, 2013) ("Applying the traditional presumption of arbitrability to such broadly worded clauses and considering the interrelation of the three agreements in this case, we conclude that the arbitration clause covers this dispute . . . . [w]ithout the Client Agreement, there are no clients to represent or attorneys' fees to recover. If Robinson Brog seeks to recover under the Joint Agreement, its claims are necessarily related to the Client Agreement and the arbitration provision in that agreement applies."); *Stolt-Nielson, SA*, 387 F. 3d at 172. ("We have said that '[i]f the allegations underlying claims touch matters covered by the parties' contracts, then those claims must be arbitrated, whatever the legal labels attached to them.").[8]

A clause, such as the one at issue here, that submits to arbitration "any claim or controversy arising out of or related to the agreement, is the paradigm of a broad clause." *Collins & Aikman Products Co. v. Building Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995). To that end, arbitration should be ordered "if the arbitration clause is broad and if the party seeking arbitration has made a claim that on its face is governed by the contract." *Id.* at 23; *see also Louis v. Dreyfus Negoce, S.A. v. Blystad Shipping & Trading Inc.*, 252 F. 3d 218 225 (2d Cir. 2001) ("When parties use expansive language in drafting an arbitration clause, presumably they intend that all issues that 'touch matters' within the main agreement to be arbitrated" inasmuch as such broad language "evidences the parties' intent to have arbitration serve as the primary recourse for disputes connected to the agreement containing the clause . . .").

Broad arbitration language would encompass claims of any nature, including claims sounding in fraud. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402-04

---

[8] The interpretation of an arbitration clause covered by the FAA is a matter of federal law. *See, e.g., In re Salomon Inc. Shareholders' Derivative Litigation*, 68 F.3d 554, 559 (2d Cir. 1995) ("[o]nce a dispute is covered by the [FAA], federal law applies to all questions of interpretation, construction, validity, revocability, and enforceability").

8

(1967) (fraud and fraud in the inducement claims subject to arbitration); *see also Merrill Lynch & Co. Inc v. Allegheny Energy, Inc.*, 500 F.3d 171, 188 (2d Cir. 2007) (holding that "an agreement to arbitrate is effective with respect to claims of fraudulent inducement that related to the contract generally"); *Campaniello Imports v. Saporiti Italia S.p.A*, 117 F.3d 655, 667 (2d Cir. 1977) (affirming district court order compelling arbitration of purported fraud claim because a claimant cannot "transform a general fraud claim into fraud in the inducement of the arbitration clause merely by stating that the arbitration clause is an element of a scheme to defraud.").

Here, all of the claims asserted by Lafontant directly relate to structured settlement transfer agreements entered into years ago that Lafontant now seeks to unwind and rescind. Moreover, the crux of Lafontant's Complaint -- which attacks the viability of the assignment of the structured settlement payments to Imperial -- is governed by the Agreements, which contain the mandatory arbitration provisions. Without the Agreements, there would have been no transfer of Lafontant's structured settlement payment rights. Moreover, Lafontant's Prayer for Relief specifically references the transactions at issue thereby relying on the Agreements. *See* Compl., Prayer for Relief, ECF No. 1 at 26-27.

While Lafontant appears to have purposefully drafted his Complaint without making specific reference to the Agreements in an obvious effort to avoid having his claims arbitrated, "[i]n determining whether a particular claim falls within the scope of the parties' arbitration agreement, [a court] focus[es] on the allegations in the complaint rather than the legal causes of action asserted." *Collins & Aikman Products Co.*, 58 F. 3d at 21. As such, this Court should reject Lafontant's thinly veiled attempt – through his carefully worded Complaint -- to avoid arbitration and dismiss the Complaint. Lafontant's factual allegations not only 'touch matters' covered by the Agreements but go to the very heart of the contractual relationship between the parties. In

9

sum, Lafontant's claims are necessarily related to the Agreements and the mandatory arbitration provisions in those Agreements apply.

### 4. Non-Signatories May Invoke the Arbitration Provision

Non-signatories to an arbitration agreement may invoke arbitration where the underlying complaint alleges that all defendants acted in concert with the signatory. *See Campaniello Imports*, 117 F.3d at 655 ("holding that "[s]ince appellants' claims against [a signatory] arise out of his relationship with [a non-signatory] they are subject to mandatory arbitration"; *see also Sidell v. Structured Settlement Investments*, No. 3:08-cv-00710 (VLB), 2009 WL 103518, *2 (D. Conn. Jan. 14, 2009) (finding that "[a]ll of the defendants may invoke the arbitration clause against Sidell . . . . The Court does note that Sidell asserts in his complaint that all of the defendants in this case were agents of or were acting in concert with the signatory to the agreement, and so all of the defendants are entitled to rely on the arbitration agreement").

Here, the Complaint defines the Imperial Defendants as "Imperial," and does not distinguish or differentiate between Imperial Structured Settlements, Imperial Finance or Imperial Holdings in the Complaint. *See* Compl. at ¶ 5, ECF No. 1 at 3 ("All of the above named corporate Defendants are affiliates and shall, at times, be collectively referred to as "Imperial."). Lafontant also lumps all of the Imperial Defendants together with respect to the various claims he has asserted. As drafted, the Complaint alleges substantially interdependent and purported concerted misconduct between a signatory (Imperial Structured Settlements) and non-signatories (the remaining Imperial Defendants). Under these circumstances, the Court must conclude that all of the Imperial Defendants -- including the non-signatories -- are entitled to seek dismissal under the arbitration provisions.

## CONCLUSION

For the reasons stated herein, the Imperial Defendants respectfully request this Court enter an Order dismissing this matter in its entirety pursuant to Fed. R. Civ P. 12(b)(1) and (6).

Dated:  February 5, 2015

>Respectfully submitted,
>
>HOLLAND & KNIGHT LLP
>
>By: /s/ *signature*
>Christopher G. Kelly
>Marisa Marinelli
>31 West 52nd Street
>New York, New York 10019
>Tel: (212)-513-3200
>Fax: (212)-385-9010