Christopher G. Kelly
Marisa Marinelli
HOLLAND & KNIGHT LLP
31 West 52nd St.
New York, New York 10019
(212) 513-3239
*Attorneys for Defendants Washington Square
Financial, LLC d/b/a/ Imperial Structured
Settlements, Imperial Finance & Trading, LLC, and
Imperial Holdings Inc.*

UNITED STATES DISTRICT COURT FOR
SOUTHERN DISTRICT OF NEW YORK

MICHAEL LAFONTANT,

      Plaintiff,

   v.

WASHINGTON SQUARE FINANCIAL, LLC   **Case No. 14-CIV-9895**
d/b/a IMPERIAL STRUCTURED
SETTLEMENTS, IMPERIAL FINANCE &
TRADING, LLC; IMPERIAL HOLDINGS INC.;
and ANDREW LEVINE,

      Defendants.

---

**DEFENDANTS WASHINGTON SQUARE FINANCIAL, LLC,
IMPERIAL FINANCE & TRADING, LLC, AND IMPERIAL
HOLDING'S INC.'S MOTION TO DISMISS AMENDED COMPLAINT**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES.................................................................................................ii

STATEMENT OF FACTS..................................................................................................2

    **A.**    THE STRUCTURED SETTLEMENT TRANSACTIONS.............................2

    **B.**    THE AGREEMENTS TO ARBITRATE.........................................................3

    **C.**    PLAINTIFF ASSERTS CLAIMS RELATING TO AGREEMENTS..............3

ARGUMENT.....................................................................................................................4

THE COURT MUST DISMISS THE COMPLAINT IN ITS ENTIRETY UNDER THE
MANDATORY ARBITRATION AGREEMENTS. .........................................................4

    1.    Arbitration Clauses Under the Federal Arbitration Act.........................4

    2.    Gateway Questions Must Be Answered by Arbitrators if Parties Agreed to
        Arbitrate Under American Arbitration Association Rules......................5

    3.    All of the Complaint's Factual Allegations and Causes of Action Touch
        Upon Matters Covered by Agreements Containing a Broad Arbitration
        Clause......................................................................................................7

    4.    Plaintiff's Claim of Fraudulent Inducement Must be Heard by an Arbitrator.......8

    5.    Non-Signatories May Invoke the Arbitration Provision.........................12

CONCLUSION ................................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*ACE Capital Re Overseas Ltd. v. Central United Life Ins. Co.*,
    307 F. 3d 24 (2d Cir. 2002) .......................................................................................................7

*Aurechhione v. Schoolman Transp. Sys., Inc.*,
    426 F.3d 635 (2d Cir. 2005) ......................................................................................................4

*Bar-Ayal v. Time Warner Cable, Inc.*,
    2006 WL 2990032 (S.D.N.Y. Oct. 16, 2006)........................................................................12

*Bell Atlantic Corp. v. Twombley*,
    550 U.S. 544 (2007)....................................................................................................................4

*Buckeye Check Cashing, Inc. v. Cardegna*,
    546 U.S. 440 (2006)....................................................................................................................7

*Campaniello Imports v. Saporiti Italia S.p.A*,
    117 F.3d 655 (2d Cir. 1977) .................................................................................................8, 12

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002) ......................................................................................................4

*Collins & Aikman Products Co. v. Building Sys., Inc.*,
    58 F.3d 16 (2d Cir. 1995) ...........................................................................................................8

*Contec-Corp. v. Remote Solution Co., Ltd.*,
    398 F.3d 205 (2d Cir. 2005) ...................................................................................................5, 6

*Garten v. Kurth*,
    265 F.3d 136 (2d Cir. 2001) .........................................................................................9, 10, 11

*Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*,
    815 F.2d 840 (2d Cir. 1987) ....................................................................................................12

*Gwathmey Siegel Kaufman, et. al v. Rales*,
    518 F. App'x 20 (2d Cir. 2013) .................................................................................................6

*Halebian v. Berv.*,
    644 F.3d 122 (2d Cir. 2011) ......................................................................................................4

*Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*,
    246 F. 3d 219 (2d Cir. 2001) .....................................................................................................5

*Imperatore v. Putnam Lovell NBF Sec. Inc.*,
    No. 05-cv-4966(RPP), 2006 WL 648214 (S.D.N.Y. Mar. 15, 2006).....................................13

*In re Salomon Inc. Shareholders' Derivative Litig.*,
    68 F.3d 554 (2d Cir. 1995) ...........................................................................................8

*JLM Industries, Inc v. Stolt-Nielson, SA*,
    387 F. 3d 163 (2d Cir. 2004) ......................................................................................5, 7

*John Hancock Life Ins. Co. v. Wilson*,
    254 F.3d 48 (2d Cir. 2001) ............................................................................................5

*Makarova v. United States*,
    201 F.3d 110 (2d Cir. 2000) ..........................................................................................4

*Merrill Lynch & Co. Inc v. Allegheny Energy, Inc.*,
    500 F.3d 171 (2d Cir. 2007) ..........................................................................................8

*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983)............................................................................................................5

*Nichols v. Washington Mut. Bank*,
    2007 WL 4198252 (E.D.N.Y. Nov. 21, 2007)...............................................................7

*Nowak v. Ironworkers Local 6 Pension Fund*,
    81 F.3d 1182 (2d Cir. 1996) ..........................................................................................4

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
    388 U.S. 395 (1967)........................................................................................................8

*Ritch v. Eaton*,
    No. Civ.A. 02-7689, 2002 WL 32107628 (E.D. Pa. Dec. 9, 2002).............................10

*Robinson Brog Leinward Greene Genovese & Gluck, P.C. v. John M. Quinn & Assocs.,
L.P.*,
    No. 12-2915-cv, 2013 WL 1707897 (2d Cir. April 22, 2013).......................................7

*Sidell v. Structured Settlement Investments*,
    No. 3:08-cv-00710 (VLB), 2009 WL 103518 (D. Conn. Jan. 14, 2009).....................12

*Sparks v. Stone Street Capital, Inc.*,
    No. 3-02-CV-724-R, 2002 WL 1575404 .......................................................................7

*Weiss v. Travex Corp.*,
    No. 02-CIV-2380, 2002 WL 1543875 (S.D.N.Y. July 12, 2002)..............................9, 10

*Williams v. Citibank, N.A.*,
    565 F. Supp. 2d 523 (S.D.N.Y. 2008) ...........................................................................4

*Wright v. SFX Entertainment, Inc.*,
    2001 WL 103433 (S.D.N.Y. Feb. 7, 2001)...................................................................11

**STATUTES**

Federal Arbitration Act, 9 U.S.C.
§ 2 ...............................................................................................................5, 7


**OTHER AUTHORITIES**

AAA Rule R-1(a) ...........................................................................................6

AAA Rule R-7(a) ...........................................................................................6

Fed. R. Civ. P. 12(b)(1)...............................................................1, 2, 4, 13

Fed. R. Civ P. 12(b)(6).....................................................................1,4, 13

www.adr.org...................................................................................................6

Defendants WASHINGTON SQUARE FINANCIAL, LLC d/b/a IMPERIAL STRUCTURED SETTLEMENTS ("Imperial Structured Settlements"), IMPERIAL FINANCE & TRADING, LLC ("Imperial Finance & Trading, LLC"), and IMPERIAL HOLDINGS, INC. ("Imperial Holdings") (collectively the "Imperial Defendants" or "Imperial"), by and through their undersigned counsel and pursuant to the provisions of Fed. R. Civ. P. 12(b)(1) and 12(b)(6)[1], move for the entry of an Order Dismissing Plaintiff's Amended Complaint (ECF No. 23) because Plaintiff agreed to submit the disputes at issue here to mandatory arbitration, including questions regarding the arbitrability of the claims asserted in the Complaint.

To avoid the mandatory arbitration provisions in his agreements with Imperial Structured Settlements, Plaintiff Michael Lafontant ("Plaintiff") presented this Court with an Amended Complaint containing certain conclusory allegations asserting that he was fraudulently induced into entering into the subject arbitration provisions. In particular, Plaintiff claims that he was told that the transfer agreements he signed were "the same" as another agreement he had previously seen when in reality the agreements were not the same. Based on these allegations, Plaintiff includes a new claim for "fraudulent inducement *with respect to the arbitration provisions.*" But a review of the Amended Complaint reveals that the allegations supporting the new claim relate to the *contract as a whole* and not to the arbitration clauses themselves.

Indeed, Plaintiff does not assert, nor could he, that there was any discussion of arbitration provisions at all. To the contrary, Plaintiff states that prior to reading the motion to compel arbitration, he had no idea what arbitration was. Consequently, Plaintiff could not have relied on any representations specifically relating to the arbitration provisions. In sum, the Complaint

---

[1] The Imperial Defendants' motion seeking dismissal pursuant to FRCP 12(b)(6) has, as its basis, the agreement to arbitrate. The Imperial Defendants reserve their rights with respect to any and all other defenses available to them, including defenses available under FRCP 12(b).

alleges that Plaintiff was fraudulently induced into entering into a contract containing an arbitration clause, not that he was fraudulently induced into entering into the arbitration provisions themselves. Under such circumstances, courts do not permit parties to avoid the effect of arbitration clauses, and therefore the dismissal requested herein should be granted.[2]

## STATEMENT OF FACTS[3]

### A. THE STRUCTURED SETTLEMENT TRANSACTIONS

From November of 2011 through May of 2012, Plaintiff entered into six (6) different transactions in which he agreed to transfer certain structured settlement payment rights to Imperial Structured Settlements. The dates of the agreements to transfer the structured settlement payment rights were as follows: November 14, 2011, November 19, 2011, November 20, 2011, December 23, 2011, March 9, 2012 and May 10, 2012. The structured settlement payment rights that Plaintiff transferred to Imperial Structured Settlements included periodic payments to which Plaintiff was entitled pursuant to an underlying settlement of various tort claims. In exchange for the transfer of these structured settlement payment rights, Plaintiff has been paid over $450,000.

---

[2] In accordance with the arbitration provisions contained in agreements, the Imperial Defendants have already commenced arbitration proceedings against Plaintiff to address the disputes between the parties, including Plaintiff's breach of his obligations under the structured settlement transaction documents. *See* Declaration of Marisa Marinelli, Esq., dated April 13, 2015, submitted herewith ("Marinelli Decl."), at ¶3, Ex. 1 (a true and correct copy of the Demand for Arbitration and Statement of Claims (the "Demand")). In the arbitration, Imperial will bring to light the many misrepresentations made by Plaintiff. To that end, the Imperial Defendants address in the Demand many of Plaintiff's misrepresentations and unsupported actions, and seek compensatory and punitive damages against Plaintiff for his actions.

[3] As explained herein, the Court is not required to accept the facts as alleged in the Complaint as true under Fed. R. Civ. P. 12(b)(1).

## B. THE AGREEMENTS TO ARBITRATE

Plaintiff executed Absolute Sale and Security Agreements (the "Agreements") for each transaction. The Agreements include an arbitration provision requiring that all disputes arising out of or relating to the Agreements be submitted to mandatory arbitration as follows:

### ARBITRATION

> Any and all controversies, claims, disputes, rights, interests, suits or causes of action arising out of or relating to this Agreement and the negotiations thereto, or the breach thereof, shall be settled by binding arbitration administered by the American Arbitration Association. The demand for arbitration shall be filed in writing with the other party to this Agreement and with the American Arbitration Association offices in the state of your residence. The arbitration shall be held in the largest city in the state of your residence. The arbitration shall be held before a single arbitrator selected in accordance with the Commercial Arbitration Rules of the American Arbitration Association in effect at the time that the demand for arbitration is filed . . . .

*See, e.g.,* Agreement dated November 14, 2011 (the "November 14, 2011 Agreement") at p. 2-3, a true and correct copy of which is attached to the Marinelli Decl. as Ex. 2. Thus, mandatory arbitration applies to this case.

## C. PLAINTIFF ASSERTS CLAIMS RELATING TO AGREEMENTS

Plaintiff's Amended Complaint alleges the following six (6) counts: negligence (Count I), gross negligence (Count II), fraud (Count III), fraudulent misrepresentation (Count IV), fraudulent inducement with respect to the arbitration provision (Count V), fraud as to the 2012 transactions (Count VI), and Conversion (Count VII), each of which relies on the purported conduct of Imperial Structured Settlements as it relates to the structured settlement transactions. The Amended Complaint also makes references to documents that Plaintiff signed and executed, which include the arbitration agreement. *See* ECF No. 23 at ¶ 37, *id.* at 10. All of the claims asserted by Plaintiff directly relate to the Agreements containing the mandatory arbitration provision.

## ARGUMENT

## THE COURT MUST DISMISS THE COMPLAINT IN ITS ENTIRETY
## UNDER THE MANDATORY ARBITRATION AGREEMENTS.

"A [claim] is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the court lacks the statutory or constitutional power to adjudicate the [claim]." *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996). In construing a Rule 12(b)(1) motion to dismiss, the party claiming subject matter jurisdiction "bears the burden of proving subject matter jurisdiction by the preponderance of the evidence." *Aurechhione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). On a Rule 12(b)(1) motion, the court may consider evidence outside of the pleadings. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

When deciding a motion to dismiss brought under a Rule 12(b)(6), a court must accept all well-pleaded factual allegations as true, but "entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 55 (2007). In addition, "[t]he [C]ourt need not accept as true an allegation that is contradicted by the documents on which the complaint relies", *Williams v. Citibank, N.A.*, 565 F. Supp. 2d 523, 527 (S.D.N.Y. 2008) (citations omitted); and the Court may "properly consider 'matters of which judicial notice may be taken, or documents either in plaintiff'[s] possession or of which plaintiff[ ] had knowledge and relied on in bringing suit.'" *Halebian v. Berv.*, 644 F.3d 122, 130 n.7 (2d Cir. 2011) (citations omitted). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,'" which renders the document 'integral' to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

### 1.    Arbitration Clauses Under the Federal Arbitration Act

The Federal Arbitration Act ("FAA") provides that an agreement that provides for resolution of disputes thereunder through arbitration "shall be valid, irrevocable, and enforceable."

9 U.S.C. § 2. The United States Supreme Court has adopted a longstanding "liberal federal policy favoring arbitration agreements." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). In light of this policy, it is well established that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id; see also Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*, 246 F. 3d 219, 226 (2d Cir. 2001) (holding that the FAA reflects a strong federal policy favoring arbitration as an alternative means of dispute resolution."); *John Hancock Life Ins. Co. v. Wilson*, 254 F.3d 48, 59 (2d Cir. 2001) (determining that even if a dispute's arbitrability proves to be "ambigu[ous]," a court is "compelled to construe the provision in favor of arbitration.").

## 2. Gateway Questions Must Be Answered by Arbitrators if Parties Agreed to Arbitrate Under American Arbitration Association Rules

In construing a motion to dismiss based on an arbitration provision, a district court must address the following issues:

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes the some, but not all of the claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings.

*JLM Industries, Inc v. Stolt-Nielson, SA*, 387 F. 3d 163, 169 (2d Cir. 2004) (citations omitted).

Acknowledging the FAA's general presumption that the threshold issue of arbitrability should be resolved by the courts, the Second Circuit has held that:

> [T]he issue of arbitrability may only be referred to the arbitrator if there is clear and unmistakable evidence from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator.

*Contec-Corp. v. Remote Solution Co., Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005) (citations omitted).

The Second Circuit has held that where, as here, "parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *Id*; *see also Gwathmey Siegel Kaufman, et. al v. Rales*, 518 F. App'x 20, 20 (2d Cir. 2013) (holding that "[t]he Agreement is not ambiguous, and by incorporating the American Arbitration Association ("AAA") rules the parties agreed to have the arbitrators decide arbitrability." ).

Like in *Rales*, in this case, the parties incorporated the AAA rules into the arbitration provisions. *See* Marinelli Decl., Ex. 2 (November 14, 2011 Agreement at p.3) ("Any and all ... disputes . . . arising out of or relating to this Agreement . . .shall be settled by binding arbitration administered by the American Arbitration Association."); *see also id.* ("The arbitration shall be held before a single arbitrator selected in accordance with the Commercial Arbitration Rules of the American Arbitration Association in effect at the time that the demand for arbitration is filed . . . ."). The applicable AAA Commercial Arbitration Rules provide: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the *existence, scope or validity of the arbitration agreement.*" AAA Rule R-7(a) (emphasis added).[4] Thus, based on the well-settled Second Circuit precedent set forth above, the agreement to arbitrate evidences the clear and unmistakable intent by the parties to arbitrate the gateway questions of the

---

[4] The rules that apply are the Commercial Rules of the AAA. *See* AAA Rule R-1(a) ("[T]he parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association (hereinafter AAA) under its Commercial Arbitration Rules or for arbitration by the AAA of a domestic commercial dispute without specifying particular rules."). The Commercial Rules of the AAA can be found at www.adr.org.

"existence, scope or validity of the arbitration agreement."[5] As such, this Court should dismiss the Complaint based on the arbitration provision.[6]

> **3.** **All of the Complaint's Factual Allegations and Causes of Action Touch Upon Matters Covered by Agreements Containing a Broad Arbitration Clause**

An arbitration agreement applies to a dispute where it touches on matters covered by the contract in question. *See ACE Capital Re Overseas Ltd. v. Central United Life Ins. Co.*, 307 F. 3d 24, 33-34 (2d Cir. 2002) (holding that language typical of broad arbitration provisions encompasses any disputes that touch matters covered by the contract in which the arbitration provision is found); *see also Robinson Brog Leinward Greene Genovese & Gluck, P.C. v. John M. Quinn & Assocs., L.P.*, No. 12-2915-cv, 2013 WL 1707897, *2 (2d Cir. April 22, 2013) ("Applying the traditional presumption of arbitrability to such broadly worded clauses and considering the interrelation of the three agreements in this case, we conclude that the arbitration clause covers this dispute . . . .Without the Client Agreement, there are no clients to represent or attorneys' fees to recover. If [plaintiff] seeks to recover under the Joint Agreement, its claims are necessarily related to the Client Agreement and the arbitration provision in that agreement applies."); *Stolt-Nielson, SA*, 387 F. 3d at 172. ("We have said that '[i]f the allegations underlying claims touch

---

[5] The United States Supreme Court has held that "regardless of whether the challenge is brought in federal or state court, a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006).

[6] Plaintiff's claim that the New York Structured Settlement Protection Act precludes arbitration provisions from being included in the underlying agreements is not a valid defense to the Imperial Defendants' motion to dismiss as any such prohibition would be preempted by the FAA. *See Nichols v. Washington Mut. Bank*, 2007 WL 4198252, *9 (E.D.N.Y. Nov. 21, 2007) (finding that FAA preempted New York state law rendering null and void arbitration clauses as it did so other than upon "such grounds as exist at law or equity for the revocation of a contract" under 9 U.S.C. § 2; *see also Sparks v. Stone Street Capital, Inc.*, No. 3-02-CV-724-R, 2002 WL 1575404, at *6, n.7 (N.D. Tex. July 15, 2002 (holding that the FAA preempts "conflicting state laws which restrict the validity or enforceability of arbitration agreements.").

matters covered by the parties' contracts, then those claims must be arbitrated, whatever the legal labels attached to them.").[7]

Here, all of the claims asserted by Plaintiff directly relate to the structured settlement transfer agreements entered into years ago that Plaintiff now seeks to unwind and rescind. Moreover, the crux of Plaintiff's Amended Complaint—which, just as the initial Complaint did, attacks the viability of the assignment of the structured settlement payments to Imperial—is governed by the Agreements, which contain the mandatory arbitration provisions. Without the Agreements, there would have been no transfer of Plaintiff's structured settlement payment rights.

### 4. Plaintiff's Claim of Fraudulent Inducement Must be Heard by an Arbitrator

A clause like the one at issue here, which submits to arbitration "any claim or controversy arising out of or related to the agreement, is the paradigm of a broad clause." *Collins & Aikman Products Co. v. Building Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995). Importantly, broad arbitration language encompass claims of any nature, *including claims sounding in fraud. See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402-04 (1967) (fraud and fraud in the inducement claims subject to arbitration); *see also Merrill Lynch & Co. Inc v. Allegheny Energy, Inc.*, 500 F.3d 171, 188 (2d Cir. 2007) (holding that "an agreement to arbitrate is effective with respect to claims of fraudulent inducement that related to the contract generally"); *Campaniello Imports v. Saporiti Italia S.p.A*, 117 F.3d 655, 667 (2d Cir. 1977) (affirming district court order compelling arbitration of purported fraud claim because a claimant cannot "transform a general

---

[7] The interpretation of an arbitration clause covered by the FAA is a matter of federal law. *See, e.g., In re Salomon Inc. Shareholders' Derivative Litig.*, 68 F.3d 554, 559 (2d Cir. 1995) ("[o]nce a dispute is covered by the [FAA], federal law applies to all questions of interpretation, construction, validity, revocability, and enforceability").

8

fraud claim into fraud in the inducement of the arbitration clause merely by stating that the arbitration clause is an element of a scheme to defraud.").

For example, in *Garten v. Kurth*, 265 F.3d 136, 142 (2d Cir. 2001), the Second Circuit recognized that "[c]laims regarding fraud in a contract containing an arbitration clause are, for the most part, also subject to arbitration." In reversing an order denying a motion to compel arbitration based on a claim of fraudulent inducement, the Second Circuit held that a party may avoid arbitration only in limited circumstances where there is a "substantial relationship between the fraud or misrepresentation and *the arbitration clause in particular.*" *Id.* (*citing Campaniello*, 117 F.3d at 667) (emphasis added). The Second Circuit went on to define a "substantial relationship" as "more than a mere claim that the 'arbitration clause is an element of the scheme to defraud; it must include '*particularized facts specific to the . . . arbitration clause which indicate how it was used to effect a scheme to defraud.*'" *Id.* (emphasis added). The Second Circuit also emphasized that a plaintiff may not "'establish a connection between the alleged fraud and the arbitration clause in particular by merely adding the allegation that the arbitration clause was part of the overall scheme to defraud.'" *Id.* at 143 (*citing Campaniello*, 117 F.2d at 667).

Significantly, district courts within the Second Circuit have granted motions to dismiss claims under an arbitration clause based on allegations similar to those raised by Plaintiff here. For example, in *Weiss v. Travex Corp.*, No. 02-CIV-2380, 2002 WL 1543875 (S.D.N.Y. July 12, 2002), a district court compelled arbitration where a plaintiff alleged he was fraudulently induced into signing a contract, which contained an arbitration provision. The plaintiff alleged that the defendant and his attorney "'surreptitiously' induced him to sign the Contract without advice of counsel" and that Plaintiff "was 'deceiv[ed]' as to the effect of the arbitration clause." *Id.* at *3 (citations omitted). The district court found these allegations insufficient to establish a "substantial

relationship" between the purported fraudulent conduct and plaintiff's assent to the arbitration clause. *Id.*

Similarly, in *Ritch v. Eaton*, No. Civ.A. 02-7689, 2002 WL 32107628 (E.D. Pa. Dec. 9, 2002), the district court granted a motion to compel arbitration where a plaintiff alleged he was fraudulently induced into entering agreements with arbitration provisions. In so doing, the district court reasoned:

> Ritch's complaint does not specifically allege that he was fraudulently induced into agreeing *to the arbitration provisions*. Rather, it only claims that Defendants induced Ritch into making agreements that contained arbitration provisions. According to the Supreme Court's decision in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, a plaintiff's allegation of fraud in the inducement of a contract containing an arbitration provision is an issue "properly adjudicated in arbitration."

*Id.* at *4 (emphasis added).

Here, although Plaintiff attempts to couch the allegations in his Amended Complaint as "fraudulent inducement *with respect to the arbitration provisions*," Plaintiff's allegations amount to nothing more than a claim that Plaintiff was induced into making agreements that contained arbitration provisions. Indeed, Plaintiff fails to identify any "particularized facts [] specific to the arbitration clause [that] indicate how it was used to effect a scheme to defraud." *Garten*, 265 F.3d at 142. Essentially, Plaintiff alleges he was told that certain contracts between different entities and involving different structured settlement contracts were the same. But Plaintiff does not allege that there was *any discussion at all* regarding arbitration prior to his signing of the agreements. In fact, Plaintiff alleges that Levine *"never mentioned arbitration or arbitration provisions"* prior to signing the agreements. ECF No. 23 at ¶ 63 (emphasis added).

Moreover, Plaintiff states that he did not even know what arbitration was at the time he entered into the agreements. *See* ECF No. 23 at ¶¶ 53, 162. Thus, not only is it clear there were

10

no discussions regarding the arbitration provisions, Plaintiff's statement makes clear that he did not rely on any representations relating specifically to the arbitration provision. In addition, Plaintiff's prayer for relief, which is identical to the prayer for relief contained in the initial Complaint, demonstrates that Plaintiff's primary and true focus is the alleged fraudulent inducement of the contract *as a whole*. *See* ECF No. 23 at 39 (seeking damages for fraudulent inducement generally and declarations that (i) "the 2011 and 2012 transactions were procured by fraud and (ii) "the 2011 and 2012 Florida Transactions should be rescinded and set aside.").

In sum, Plaintiff's allegations do not "'establish a connection between the alleged fraud and the arbitration clause in particular," and he cannot remedy such a deficiency "by merely adding the allegation that the arbitration clause was part of the overall scheme to defraud." *Garten*, 265 F.3d at 143. Consequently, Plaintiff fails to establish a "substantial relationship" between the purported fraudulent conduct and plaintiff's assent to the arbitration clause. *See, e.g., Wright v. SFX Entertainment, Inc.*, 2001 WL 103433, *4 (S.D.N.Y. Feb. 7, 2001) ("'Even though challenges are nominally made to the validity of both of the arbitration clause and of the underlying contract, there must be allegations of at least some defects pertaining specifically to the arbitration clause itself, not as one of many clauses in an allegedly defective contract.'") (*citing* 2 *Federal Arbitration Law* § 15.3.4, at 15:41). Plaintiff's Amended Complaint is simply an attempt by Plaintiff to be excused from complying with agreements that he received, signed, and had ample opportunity to review.[8] In short, because Plaintiff does not specifically allege that he was fraudulently induced

---

[8] Plaintiff does not dispute that he received the agreements and signed the agreements. Apparently, he is simply claiming he did not review all of the provisions of the agreements. Importantly, however, not only did Plaintiff have the opportunity to review the agreements himself, he had the opportunity to engage an attorney to review the agreements as well (and Plaintiff had clearly engaged attorneys in the past to address his legal affairs in order to recover the structured settlements). As one judge in Delaware emphasized, "[p]eople need to stop signing

into agreeing *to the arbitration provisions*, his fraudulent inducement claim must be submitted to arbitration.[9]

### 5.     Non-Signatories May Invoke the Arbitration Provision

Non-signatories to an arbitration agreement may invoke arbitration where the underlying complaint alleges that all defendants acted in concert with the signatory. *See Campaniello,* 117 F.3d at 655 ("holding that "[s]ince appellants' claims against [a non-signatory] arise out of his relationship with [a signatory] they are subject to mandatory arbitration"; *see also Sidell v. Structured Settlement Investments,* No. 3:08-cv-00710 (VLB), 2009 WL 103518, *2 (D. Conn. Jan. 14, 2009) (finding that "[a]ll of the defendants may invoke the arbitration clause against Sidell . . . . The Court does note that Sidell asserts in his complaint that all of the defendants in this case were agents of or were acting in concert with the signatory to the agreement, and so all of the defendants are entitled to rely on the arbitration agreement").

Here, the Amended Complaint defines the Imperial Defendants as "Imperial," and does not distinguish or differentiate between Imperial Structured Settlements, Imperial Finance, or Imperial Holdings in the Complaint. *See* ECF No. 23 at ¶ 5, *id.* at 4 ("All of the above named corporate

---

things they don't intend to live up to. I don't say that lightly." *See Zaman v. Amadeo Holdings, Inc.,* C.A. No. 3115-VCS, at 15 (Del. Ch. Ct. Aug. 1, 2007) (TRANSCRIPT).

[9] Plaintiff's contention that he did not read the contract does not exempt him from his requirement to arbitrate. *See* ECF No. 23 at ¶ 54. "[A]n individual who signs or otherwise assents to a contract without reading it (despite having an opportunity to do so) is bound by the contract, including its arbitration provision." *Bar-Ayal v. Time Warner Cable, Inc.,* 2006 WL 2990032, *8 (S.D.N.Y. Oct. 16, 2006) (citations omitted); *see also Genesco, Inc. v. T. Kakiuchi & Co., Ltd.,* 815 F.2d 840, 845-46 (2d Cir. 1987) ("Under general contract principles a party is bound by the provisions of a contract he signs, unless he can show special circumstances that would relieve him of such an obligation" and the court must "focus not on whether there was subjective agreement as to each clause in the contract, but on whether there was an objective agreement as to each clause in the contract").

Defendants are affiliates and shall, at times, be collectively referred to as "Imperial."). Plaintiff also lumps all of the Imperial Defendants together with respect to the various claims he has asserted. As drafted, the Complaint alleges substantially interdependent and purported concerted misconduct between a signatory (Imperial Structured Settlements) and non-signatories (the remaining Imperial Defendants). Under these circumstances, the Court must conclude that all of the Imperial Defendants—including the non-signatories—are entitled to seek dismissal under the arbitration provisions.

## CONCLUSION

For the reasons stated herein, the Imperial Defendants respectfully request this Court enter an Order dismissing this matter in its entirety pursuant to Fed. R. Civ P. 12(b)(1) and (6).[10]

Dated: April 13, 2015

Respectfully submitted,

HOLLAND & KNIGHT LLP

By:_____
Christopher G. Kelly
Marisa Marinelli
31 West 52nd Street
New York, New York 10019
Tel: (212)-513-3200
Fax: (212)-385-9010

---

[10] The Court may dismiss claims when—like here— the scope of an agreement containing an arbitration clause "encompasses all of Plaintiff's claims before this court, and there is therefore no reason to stay the proceedings pending arbitration." *Imperatore v. Putnam Lovell NBF Sec. Inc.*, No. 05-cv-4966(RPP), 2006 WL 648214, *6 (S.D.N.Y. Mar. 15, 2006).