**UNITED STATES DISTRICT COURT FOR**
**SOUTHERN DISTRICT OF NEW YORK**

MICHAEL LAFONTANT,

               Plaintiff,

       v.

WASHINGTON SQUARE FINANCIAL,
LLC d/b/a IMPERIAL STRUCTURED
SETTLEMENTS, IMPERIAL FINANCE &
TRADING, LLC;
IMPERIAL HOLDINGS INC.; and
ANDREW LEVINE

               Defendants.

**Case No.  14-cv-9895 (CS)**

---

**MEMORANDUM OF LAW IN OPPOSITION**
**TO DEFENDANTS WASHINGTON SQUARE FINANCIAL, LLC, IMPERIAL**
**FINANCE & TRADING, LLC, IMPERIAL HOLDINGS INC.'S  MOTION TO DISMISS**
**AND**
**DEFENDANT ANDREW LEVINE'S MOTION TO DISMISS**
**THE AMENDED COMPLAINT**

Edward S. Stone
Marc Davies (*pro hac vice*)
EDWARD STONE LAW P.C.
305 Broadway, Suite 1001
New York, NY 10007
eddie@edwardstonelaw.com
Telephone:  203-504-8425
Fax:  203-348-8477

*Attorneys for Plaintiff*
*Michael Lafontant*

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ……………………………………………………. ii

INTRODUCTION………………………………………………………………... 2

FACTUAL BACKGROUND…………………………………………………………. 6

ARGUMENT: DEFENDANTS MOTIONS TO DISMISS SHOULD BE DENIED.. 11

    I.      STANDARD OF REVIEW…………………………………………….. 11

    II.     PLAINTIFF DID NOT AGREE TO ARBITRATE……………………. 12

    III.    THE ORDERS OBTAINED BY IMPERIAL IN THIS CASE ARE NOT
             QUALIFIED ORDERS WITHIN THE MEANING OF SECTION 5891
             OF THE INTERNAL REVENUE CODE……………………………… 18

    IV.    THE FACTS OF THIS CASE REQUIRE THAT DEFENDANTS MOTION
             BE DENIED……………………………………………………………. 22

CONCLUSION……………………………………………………………….. 24

**Cases**                                                                                    **Page**

*321 Henderson Receivables v. Martinez,*
    816 N.Y.S. 2d 298 (Sup. Ct. New York County 2006)…………………………………..19

*Allstate Settlement Corp. v. Rapid Settlements, Ltd.,*
    2007 U.S. Dist. LEXIS 34136 (E.D. Pa. May 8, 2007)…………………………………..21

*Allstate Settlement Corp. v. Rapid Settlements, Ltd.,*
    559 F.3d 164, 200……………………………………………………………………..…..21

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)……………………………………………………..11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)…………………………………..…………11

*Brady v. United States*, 397 U.S. 742, 748 (1970)…………………………………..……….4, 12

*Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440 (2006)……………..……….....……13

*Campaniello Imps., Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655 (2d Cir. 1997)…..………....……14

*Contec-Corp. v. Remote Solution Co. Ltd.*, 398 F.3d 205 (2d Cir. 2005)…………….......………15

*Felton v. Walston & Co., Inc.,* 508 F. 2d 577 (2d Cir. 1974) ...……………………………..17, 18

*Garten v. Kurth*, 265 F.3d 136 (2d Cir. 2001)……………………………………....…..……17, 18

*Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840 (2d Cir. 1987)………………………..……4

*In re Rapid Settlements, Ltd. v. BHG Structured Settlements, Inc.,*
    202 S.W.3d 456, 2006 Tex. App. LEXIS 8149 (Tex. App. Beaumont 2006)……..….…21

*In re: Olivarez*, 847 N.Y.S.2d 905, (Sup. Ct., Kings County 2007)……………………….…19

*In Re: Approval for Transfer of Structured Settlement Payment Rights*
    *u/a/b RSL Funding, LLC and Jerry M. Green*, No. 2011-CA-321, 2013 WL 6697803
    (Fla. Cir. Ct. Dec. 18, 2013)……………………………………………………...…..21

*Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007)…………………………………….…..11

*JLM Industries, Inc v. Stolt-Nielson, SA*, 387 F.3d 163 (2d Cir. 2004)………………..…….2, 13

*Makarova v. United States*, 201 F.3d 110 (2d Cir. 2000)………………………………………6

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc.,* 473 U.S. 614 (1985)……………...…4, 12

*Moseley v. Electronic & Missile Facilities,* 374 U.S. 167 (1963)…………………..…….2, 5, 18

*Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72 (2d Cir. 1998)…………………………………4

*Pac. Life Ins. Co. v. Rapid Settlements, Ltd.,*
    309 Fed. Appx. 459, 2009 U.S. App. LEXIS 2534 (2d Cir. N.Y. 2009)……………...…21

*Pellman v. Cinerama, Inc.*, 503 F. Supp. 107 (S.D.N.Y. 1980)…………………………………12

*Preston v. Ferrer*, 552 U.S. 346 (2008)……………………………………………………..……16

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967)………………2, 13, 15, 17

*Settlement Funding LLC v. RSL Funding LLC*, 3 F.Supp. 3d 590 (S.D. Tex. 2014)…………..…21

*Sledjeski & Teirney, PLLC*, 2009 U.S. Dist. LEXIS 61393…………………………………..…11

*St. Paul Fire & Marine Ins. Co. v. Sledeski & Tierney, PLLC*, No. 08-cv-5184, 2009 WL
2151425 (E.D.N.Y. Jul. 17 2009)………………………………………………………..……11

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)……………………………………………6

*Symetra Life Ins. Co. v. Rapid Settlements*, Ltd. 509 F.Supp 2d 809 (SD Tex. 2008)…………21

**Statutes**

Federal Arbitration Act, 9 U.S.C. §1 *et. seq*……………………………………………..…23

Federal Rules of Civil Procedure Rule 12 (b)(1)……………………………………....……6

Federal Rule of Civil Procedure Rule 12(b)(6)……………………………………………6

Fla. Stat. § 626.99296…………………………………………………………………3, 20

Internal Revenue Code § 5891………………………………………………..…3, 18, 19, 20

New York General Obligations Law § 5-1701 et seq. ……………………………..…………..3, 5

Victims of Terrorism Tax Relief Act of 2001, 26 U.S.C. § 1, *et. seq*……………….....………3, 19

Plaintiff Michael Lafontant ("Lafontant"), by and through undersigned counsel, respectfully submits this memorandum of law in support of his opposition to defendants Washington Square Financial, LLC, Imperial Finance & Trading, LLC, Imperial Holdings, Inc. (herein "Imperial Defendants") motion to dismiss and defendant Andrew Levine's motion to dismiss (herein "Levine") the amended complaint pending arbitration (collectively, the "Motions"). Imperial Defendants and Levine are sometimes referred to collectively herein as "Defendants".

## INTRODUCTION

The American system of jurisprudence allows all citizens, including naïve 19 year olds, the right to have their claims heard in court, and only knowing and intelligent consent to waive these rights prevents a federal court from having jurisdiction over otherwise cognizable federal claims. *Moseley v. Electronic & Missile Facilities,* 374 U.S. 167 (1963); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967); *JLM Industries, Inc. v. Stolt-Nielson, SA,* 387 F.3d 163, 169 (2d Cir. 2004). No such consent to waive Plaintiff's rights exists in this case. More importantly, while Defendants would like this Court to believe that the case is about a series of agreements that they prepared and had Plaintiff sign under highly suspect circumstances, they are missing the point. This case is really about whether or not Defendants engaged in fraudulent conduct in violation of state and federal law. Plaintiff alleges that he was thoroughly duped, groomed and taken advantage of by Defendants in a series of transactions that did not comply with state or federal law and they are now attempting to use broad arbitration provisions as a way to avoid being held accountable. Plaintiff submits that Defendants are missing the mark, and that his claim deserves to be heard in federal court both because Defendants' fraudulent conduct tainted the arbitration provisions they surreptitiously slipped into

his structured settlement transaction documents, and because those transaction documents violated federal laws in ways that require federal court intervention.

Section 5891 of the Internal Revenue Code created a framework for the sale of structured settlement payment rights. Congress enacted this provision in response to perceived abuses in the structured settlement factoring business as part of the Victims of Terrorism Tax Relief Act of 2001. Congress specifically intended to prevent any party subject to the taxing authority of the United States from acquiring structured settlement payment rights unless they comply with the provisions of the Victims of Terrorism Tax Relief Act of 2001. All state structured settlement protection acts, including those of New York[1] and Florida[2] require a "Qualified Order" under an applicable state statute in order for a payee to validly transfer his/her structured settlement payment rights. Any order purportedly obtained in a state court that does not meet the conditions outlined in I.R.C. § 5891 is void *ab initio*. Any attempt to use arbitration provisions to circumvent Section 5891 is improper and other courts across the country have routinely concluded that the Federal Arbitration Act ("FAA") does not pre-empt a state structured settlement protection act such as Florida's or New York's, both of which require a "Qualified Order" and only judges with jurisdiction in the state in which the payee of the structured settlement is domiciled may issue a "Qualified Order." In the instant case, the facts are clear that Plaintiff was not domiciled in Florida at the time the parties entered into the November and December 2011 agreements. These agreements could not therefore lead to a Qualified Order within the meaning of I.R.C. Section 5891, as the Sumter County court that issued those orders simply did not have jurisdiction to do so. Neither can the arbitration provisions, contained

---

[1] New York General Obligations Law § 5-1701 *et seq*. (the "New York Structured Settlement Protection Act").

[2] Fla. Stat. § 626.99296 (the "Florida Structured Settlement Protection Act").

within the agreements that gave rise to the void orders, act to take away the jurisdiction of a federal court to rule on their validity and whether or not they violate a federal statute.

The facts of this case also point exclusively towards this Court retaining jurisdiction based on Plaintiff's lack of knowing consent to arbitration and the fraudulent conduct of Defendants. In cases involving arbitration provisions, the threshold question involves whether the parties agreed to arbitrate. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc.,* 473 U.S. 614, (1985); *Genesco, Inc. v. T. Kakiuchi & Co*., 815 F.2d 840, 844 (2d Cir. 1987) *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 75-76 (2d Cir. 1998). In the case before this Court today, the facts are clear that Plaintiff did not knowingly consent to arbitration and did not even know what arbitration was. Defendants admit as much in their motion to dismiss. (Imperial Defendants Motion to Dismiss at p. 1). As a result, all of the case law they cite, which involves fact patterns wherein the parties did agree to arbitrate in the first instance, are irrelevant. The American system of jurisprudence simply does not allow for a 19 year-old to waive his constitutional right to have legitimate claims heard in federal court unless he knowingly and intelligently waives that right. *Brady v. United States*, 397 U.S. 742, 748 (1970) (Waivers of constitutional rights not only must be voluntary, but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences).

Although Plaintiff did not knowingly consent to arbitrate, he does admit to being tricked into signing documents that purportedly contained arbitration provisions he was unaware of due to Defendants' fraudulent misrepresentations. Such fraud therefore vitiates Plaintiff's consent to the arbitration provisions. Also, because it was Defendants' fraud that caused Plaintiff to unknowingly consent to arbitration, there is a direct cause and effect relationship between Defendant's fraudulent conduct and the arbitration provisions at issue in this case. While

Defendants take great pains to cite cases with factual underpinnings vastly different than the one at bar, even those distinguishable cases still stand for the proposition that where fraudulent conduct taints the parties' agreement to the arbitration clause itself, a federal court must retain jurisdiction over the case. Plaintiff's Amended Complaint [ECF Doc. 24] could not draw a clearer line connecting Defendants' fraudulent misrepresentations to Plaintiff's unknowing consent to an arbitration provision that he had never read, did not understand and did not agree to. As Chief Justice Warren explained in his concurring opinion in *Moseley*:

> Fraud in the procurement of an arbitration contract, like fraud in the procurement of any contract, makes it void and unenforceable and we agree that this question of fraud is a judicial one, which must be determined by a court. To allow this question to be decided by arbitrators would be to that extent to enforce the arbitration agreement even though steeped in the grossest kind of fraud." *Id*. at 172 (Warren, C.J., concurring).

Arbitration is inappropriate in this matter because Plaintiff Michael Lafontant was fraudulently induced into entering into agreements containing arbitration clauses after being persuaded by Defendants to abandon his petition to sell his structured settlement payments in New York, where he was domiciled, and where *arbitration provisions are not permitted* in structured settlement sale agreements.[3]

Instead, Defendants convinced Plaintiff to pursue a sale of his structured settlement payments in the State of Florida, where Plaintiff did not reside and was not domiciled. After orchestrating Plaintiff's fake "relocation" Defendants, through Levine, engaged in a series of improper acts in furtherance of their fraud, including: sending money to Plaintiff in violation of

---

[3] Section 5-1704 of the New York Structured Settlement Protection Act provides in pertinent part: "No transfer agreement or other document of agreement executed in association with the transfer shall contain any provision described in this section. To the extent that a prohibited provision is included in a transfer agreement such provision shall be void and unenforceable. A prohibited provision is: (a) any provision that waives the payee's right to sue under any law, or where the payee agrees not to sue, or which waives jurisdiction or standing to sue under the transfer agreement…."

New York and Florida law before the entry of a Qualified Order; sending Plaintiff stored value cards; sending Plaintiff plane tickets so Plaintiff could travel to Florida; arranging for Plaintiff to get a lease in Florida for property he never saw or occupied; arranging for Plaintiff to purportedly "open" a bank account and providing funds to do so; and arranging for Plaintiff to get a new state identification card from a state other than the state of his domicile. All of the above actions were undertaken by Defendant Levine, Imperial's agent and employee. Imperial topped it all off by slipping broad arbitration clauses into the Florida agreements which looked and felt like the pending New York agreement, and which Plaintiff understood to be the "same as the New York Agreement" and insisting that Plaintiff waive his right to counsel.

In their motions to dismiss, Defendants assert that since there was no discussion of the arbitration clauses between them and Lafontant, there could be no fraudulent inducement with respect to the arbitration clauses. In a nutshell, Defendants are asking this court to create a rule of law which allows them to illicitly slip an arbitration clause into a document, not tell Plaintiff about its insertion, encourage Plaintiff to waive his right to counsel or any form of independent professional advice and through the successful fraudulent insertion of this clause, forever remove Plaintiff's constitutional right to have his claims heard in federal court.

## FACTUAL BACKGROUND

The following facts, which have all been alleged in the Amended Complaint, must be deemed true for purposes of the Motions:[4]

In 2010, Defendant Andrew Levine ("Levine"), then employed with Settlement Funding LLC, an affiliate of a national structured settlement factoring company known as "Peachtree"

---

[4] Under Rule 12 (b)(1) when addressing the question of subject matter jurisdiction the court may consider evidence outside the pleadings. *See Makarova v. United States*, 201 F.3d 110, 113(2d Cir. 2000). Under Rule 12 (b) (6) the court must accept plaintiff's factual allegations as true. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508, n. 1 (2002).

(referred to herein as "Settlement Funding") solicited Plaintiff about selling some of his structured settlement payments. At the time, Plaintiff was just 19 years old. Settlement Funding filed a petition in Orange County, New York where Plaintiff was domiciled seeking the court's approval pursuant to the New York Structured Settlement Protection Act, to sell $190,000 of payments in exchange for a lump sum of $101,120.86 (the "2010 Orange County Transaction"). Plaintiff sought this lump sum in order to pay speeding tickets, attorneys' fees for a criminal case against a family member for theft, his car loan, a personal loan, and tuition at community college. In January 2011, that New York petition was approved.

In early 2011, Defendant Levine again approached Plaintiff about selling more of his payments. Plaintiff was interested in selling some additional payments in order to fund a hip hop artist representation business he was starting called Flight Life Inc. In order to finance this new business, Plaintiff sought the counsel of an entertainment law specialist and came up with a business plan that outlined a need for approximately $110,000 to build the business.

In May 2011, Settlement Funding filed a second petition in Orange County, New York seeking approval under New York's Structured Settlement Protection Act to purchase 240 monthly payments each in the amount of $1,550 commencing June 22, 2014 through and including May 22, 2034, increasing 3% annually, and $125,000 due on or about June 22, 2026 (the "2011 Orange County Transaction"). In exchange for the sale of these payments, Plaintiff was to receive $130,000. According to the disclosures provided to Plaintiff the discount rate for this transaction was 15.35%. Despite Plaintiff's desire to sell his payments, in his quest to determine whether the sale of Plaintiff's payments was in his "best interests" in accordance with the requirements New York's Structured Settlement Protection Act, Judge Lawrence H. Ecker, presiding in the Supreme Court of New York, Orange County, requested additional information

and documentation form Plaintiff regarding his business plan and requested copies the court file from the 2010 Orange County Transaction.

Plaintiff had the documentation involved in the 2011 Orange County Transaction reviewed by his attorney, Robert A. Celestin, Esq., who provided Judge Ecker, with confirmation of his advice to Plaintiff. In fact, attorneys for Settlement Funding forwarded a letter from Mr. Celestin dated November 15, 2011 to Judge Ecker via Federal Express on November 16, 2011[5], which was two days *after* the Imperial Defendants claim that Plaintiff was domiciled in Florida and entering into a transfer agreement in Florida, even though he did not even so much as visit the state until several days later. A letter from the same attorneys for Settlement Funding forwarded a Notice of Discontinuance in the 2011 Orange County Transaction to New York Supreme Court, Orange County via first class mail on December 21, 2011. Stamps on the Notice of Discontinuance indicate that it was received by the court on December 28, 2011 and action was taken by Eileen Stanford, Chief Clerk on January 3, 2012.[6]

There is no dispute that the sale agreements in the 2010 Orange County Transaction or the 2011 Orange County Transaction did not contain arbitration clauses.

In late 2011, Defendant Levine told Plaintiff that he was leaving his job at Settlement Funding and was going to work for Imperial and that Imperial had a way to get Plaintiff's deal approved quickly in Florida. While the 2011 Orange County Transaction was still pending before Judge Ecker, Defendant Levine persuaded Plaintiff to travel to Florida for the purpose of entering into a sale agreement with Imperial. Defendant Levine sent Plaintiff a plane ticket, picked him up at the airport, arranged for Plaintiff to obtain a "lease" for an apartment for which he never paid any rent or put down a security deposit, and assisted Plaintiff in "opening" a bank

---

[5] See Declaration of Edward S. Stone, Esq. dated May 13, 2015 ("Stone Decl.") at Exhibit C.
[6] *See* Stone Decl. at Exhibit D.

account at an RBC Bank branch that has no record of him as an accountholder, and then took Plaintiff to obtain a Florida identification card, holding himself out as Plaintiff's attorney.

The next morning Defendant Levine took Plaintiff to meet a notary, Sharnell Shenekia Spencer, to sign documents to sell his structured settlement payments to Imperial instead of Settlement Funding. Defendant Levine told Plaintiff that the documents he was signing were the same documents that he had previously signed and had reviewed by his New York counsel in connection with the Orange County transaction. Defendant Levine specifically directed Plaintiff to the pages that required signatures and initials. Each time Plaintiff started looking more closely at the document packages Levine steered him back to signature pages and repeatedly stated that "you already got these in New York, it is the same stuff that you looked at there". Defendant Levine also reiterated several times during that breakfast and signing session that the Florida deal was the same as the New York deal, except that Plaintiff would be getting more money because "Florida had better rates than New York". There is no dispute that arbitration was never discussed.[7] Plaintiff was not informed that Defendants had placed an arbitration provision into the deal documents and represented to Plaintiff that the agreement was "the same" as the agreement he had signed in New York; an agreement that did not contain any arbitration provision. A cursory examination of the two documents reveals that they look and "feel" very much the same. *See* Stone Decl. at Exhibits A and B.

Except the agreements were not the same.

From November 2011 to May 2012, Defendants would have Plaintiff sign six agreements covered by four transfer petitions which ultimately resulted in a divestiture of Plaintiff's future periodic payments worth over three million dollars. In fact, Defendants obtained Plaintiff's

---

[7] *See* Defendant Imperial's Motion to Dismiss Amended Complaint at p 1.

signature on some of these agreements outside of the presence of a notary and on the hood of Defendant Levine's car in the Florida airport parking lot. Each of the agreements used to facilitate the sale of Plaintiff's payments to Imperial in Florida looked virtually identical to the agreement Plaintiff had entered into in New York with Settlement Funding, except for one very specific detail – a broad arbitration clause.[8]

Before Plaintiff Michael Lafontant turned 21 years of age, Defendants had fraudulently induced Plaintiff into entering into six agreements, all with broad arbitration provisions, effectively raiding his entire structured settlement. All of the agreements were used to obtain orders in 'friendly' jurisdictions where Defendants knew that the orders would be approved without conditions or scrutiny and that no personal appearance by Plaintiff would be required. Discount rates in the Imperial transactions were as high as 26%.

Plaintiff filed this action on December 15, 2014 and after requesting an extension of time to answer, Defendant Imperial filed a demand for arbitration in Miami, Florida. Plaintiff objected to the arbitration on the basis of locale and because of this prior pending action. Defendants opposed all of Plaintiff's objections and even objected to Plaintiff's request for a pre-motion conference in accordance with this Court's local rules. Defendants then filed the instant motions to dismiss.

---

[8] *See* Stone Decl. at Exhibit A (copy of one of the six Florida Imperial agreements) and Exhibit B (the partial copy of the 2011 Orange County Agreement – the court file does not contain the complete agreement).

## ARGUMENT

## DEFENDANTS MOTIONS TO DISMISS SHOULD BE DENIED

## I.    STANDARD OF REVIEW

"In reviewing a motion pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *St. Paul Fire & Marine Ins. Co. v. Sledj eski & Tierney, PLLC*, No. 08-cv-5184, 2009 WL 2151425, at *3 (E.D.N.Y. Jul. 17 2009) (citation omitted). "The plaintiff must satisfy 'a flexible "plausibility standard' " *Sledjeski & Teirney, PLLC*, 2009 U.S. Dist. LEXIS 61393, at *3 (quoting *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

[O]nce a claim has been stated adequately, it may supported by  showing any set of facts consistent with the allegations in the complaint" *Sledjeski & Tierney, PPLC*, 2009 U.S. Dist. LEXIS 61393, at *3 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 560 (2007).  "The Court, therefore, does not require 'heightened fact pleadings of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Sledjeski & Tierney, PLLC*, 2009 U.S. Dist. LEXIS 61393, at *3 (quoting *Twombly*, 550 U.S. at 570).

In *Iqbal*, the U.S. Supreme Court set forth a two pronged test for courts to use in deciding a motion to dismiss.  First, the court must identify "pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal,* 556 U.S. at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. Second, where a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. "The plausibility standard is not akin to a 'probability requirement,' but

it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 678 (quoting *Twombly*, 550 U.S. 556-557) (internal citations omitted).

Plaintiff has met his burden especially given that most of the documents needed to substantiate claims are in Defendants' possession. *See Felton v. Walston & Co., Inc.,* 508 F. 2d 577, 582 n. 6 (2d Cir. 1974); *Pellman v. Cinerama, Inc.*, 503 F. Supp. 107, 111 (S.D.N.Y. 1980).

## II.     PLAINTIFF DID NOT AGREE TO ARBITRATION

An "agreement" to arbitrate cannot be enforced if one of the parties to the alleged "agreement" did not consent to arbitrate.[9] *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc.,* 473 U.S. 614, (1985).  Defendants' admit in their motion to dismiss that Plaintiff had no knowledge of what an arbitration provision was, and well pled facts clarify that Imperial placed the disputed arbitration provision into several agreements without telling Plaintiff. Defendants also led Plaintiff to believe that the agreements placed in front of him at a breakfast table, and later on the hood of a car, were the same as previous agreements which contained no arbitration provisions.   While their active concealment worked in that Plaintiff signed documents, thereby unknowingly consenting to arbitration, another result of their success is that Defendants' fail when it comes to the threshold question of whether the parties agreed to arbitrate in the first instance.  Absent knowing consent, which all admit does not exist here, Plaintiff could not give up the right to have his case heard in federal court. *Brady v. United States*, 397 U.S. 742, 748 (1970).

Even looking past that threshold question, the conduct admitted by Defendants and pled in the Amended Complaint paints a clear and detailed picture of deception and fraud directly

---

[9] Defendants do not make a legitimate argument, or offer a strong reason why this court should enforce an arbitration provision that plaintiff did not knowingly consent to or even understand.

related to the arbitration provisions at issue. The United States Supreme Court has held that where there is "fraud in the inducement of the arbitration clause itself – an issue which goes to the 'making' of the agreement to arbitrate – the federal court may proceed to adjudicate it." *Prima Paint Corp. v. Flood & Conklin Mfg. Co*., 388 U.S. 395, 403-404 (1967); *See also Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 445 (2006) ("As a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract"); *JLM Indus. v. Stolt-Nielsen SA*, 387 F. 3d 163, 169-170 (2d Cir. 2004).

Plaintiff did not knowingly consent to waive his right to bring his claims against Imperial and others in federal court. Defendants do not contest that their employee, Andrew Levine, made a concerted effort to have Plaintiff withdraw the deal pending in New York with Levine's old employer, and instead enter into a new deal in Florida with Defendant Imperial, his new employer. Defendants freely admit that there was no discussion between Levine and Plaintiff concerning arbitration, and that Levine did not tell Plaintiff he changed the New York deal by adding an arbitration provision. They freely admit that Plaintiff did not even know what arbitration was when he signed documents handed to him over breakfast, some of which contained arbitration provisions. They do not even counter Plaintiff's allegation, which must be accepted as true for purposes of this motion, that arbitration did not come up because Defendant Imperial's employee, Andrew Levine, told Plaintiff that the Florida deal was the same as the pending New York deal. This very material statement turned out to be a false and misleading representation, as all of the Florida transaction documents most certainly contained arbitration provisions, whereas the New York transaction documents did not contain arbitration provisions. Moreover, all of these fraudulent actions went to the making of the agreement to arbitrate,

putting the jurisdiction over plaintiff's claims squarely before this Court. *Prima Paint Corp.* 388 U.S. 395, 403-404 (1967).

The Second Circuit has held that there must be "some substantial relationship between the fraud or misrepresentation and the arbitration clause in particular" *Campaniello Imps., Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655, 667 (2d Cir. 1997). Defendants seem to argue that where, as here, a defendant slips an arbitration provision into a document, but misleads the plaintiff into thinking that the document contained no arbitration provision, there is somehow no substantial relationship between the defendant's fraudulent misrepresentation and the very same arbitration provision which defendant induced plaintiff to unknowingly agree to.

Nothing could be farther from the truth. There is no more direct a relationship between fraudulent conduct and an arbitration provision than that which is provided by the facts of this case. Plaintiff, a 19 year old young man, is told that a future deal is the same as a pending deal, when in fact the future deal has an arbitration provision not contained in the pending deal. Relying on this misrepresentation, the 19 year old "signs" on to a deal with an arbitration provision that he has not seen, does not understand, and did not knowingly consent to.

These clear examples of fraud take on an even more sinister aspect when one fully considers the context. This is a case in which Plaintiff was involved in a transaction to sell a small portion of his structured settlement in New York, the state of his official domicile at a 15% discount rate. He had a plan for the money he was to receive through the transaction, he had legal counsel who helped him review the structured settlement documents, and a New York judge who was also in the process of reviewing the pending deal and considering whether it was in the best interest of the Plaintiff as required by New York law. This deal that was pending in New York therefore had two levels of review - two places where the focus was squarely on

whether the transaction was in Plaintiff's best interests. The pending New York deal was to set to provide Plaintiff with over $100,000 in exchange for roughly 1/6 of his future structured settlement payments, using a discount rate of approximately 15%. Most importantly, the deal did not and could not have any arbitration provision.

The facts in the Amended Complaint clearly set forth that Defendants' lies and misrepresentations led Plaintiff to sign an agreement that contained an arbitration clause that he did not expect to be there, did not see, understand or consent to. Defendants want this court to create a rule of law which allows a defendant to slip an arbitration clause into a document, not tell the plaintiff about its insertion, and through their successful insertion of an arbitration clause, forever remove plaintiff's constitutional right to have his claims heard in federal court.[10]

Defendants also place too much reliance on *Prima Paint Corp. v. Flood & Conklin Mfg. Co.* 388 U.S. 395 (1967), a case that is easily distinguishable from the instant one. *Prima Paint* involved two sophisticated companies negotiating one companies' purchase of the other. The purchaser later found that the seller fraudulently represented its solvency and sued for breach. The negotiated agreement contained an arbitration provision which the Supreme Court found enforceable because the fraud alleged by the purchasing plaintiff involved the value of the company it purchased, and was not related to the parties' joint decision to make arbitration the

---

[10] Defendant also argues that where, as here, "parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." (quoting *Contec-Corp. v. Remote Solution Co. Ltd.*, 398 F.3d 205 (2d Cir. 2005) This argument fails for one crucial reason; Defendants' freely admit that Plaintiff did not know what arbitration was when he entered into the agreements at issue, and so, could not have explicitly "incorporate(d) rules that empower an arbitrator to decide issues of arbitrability." This takes us back to the true threshold question; was there an intention by both sides to agree to arbitrate? Again, as to this question, Defendants admit that Plaintiff did not knowingly agree to arbitrate. Defendants' success in fraudulently inducing Plaintiff into signing agreements that contained arbitration provisions he had never seen and did not agree to, should not be rewarded by stripping Plaintiff of his rights to have his day in federal court.

contract's dispute resolution mechanism. In short, the case involved a fight over whether fraud led the plaintiff to pay too much, not whether they were induced into consenting to arbitration. Under these facts, the Supreme Court agreed that the contractual dispute should properly be before an arbitrator. However, in *Preston v. Ferrer*, the Supreme Court also clarified that only attacks on the validity of an entire contract, "as distinct from attacks aimed at the arbitration clause, are within the arbitrator's ken". *Preston v. Ferrer*, 552 U.S. 346, 353 (2008).

The facts of this case are completely distinguishable from *Prima Paint*, as the allegations in Plaintiff's Amended Complaint, unlike those in *Prima Paint*, clarify that Defendant's fraud led Plaintiff to unwittingly agree to the very arbitration provision at issue. This is not just a case where there was no conduct that was alleged to have tainted one parties' consent to arbitrate, and sophisticated individuals and corporations should therefore be held to their agreement to resolve their dispute through that process. Here, Plaintiff was unsophisticated, but did have a lawyer who reviewed and explained to Plaintiff the terms of the New York deal pending in the fall of 2011. Defendants then inserted arbitration provisions into the November and December Florida agreements that were unfavorable to Plaintiff. They concealed these new provisions by telling Plaintiff that the new deal was the same as the pending deal, and that he should not have his lawyer look at the new deal. These statements constituted the kind of active steps related to the arbitration provision that were missing in *Prima Paint*, and thus move this case outside of its ambit.

The timing of these transactions also provides important context regarding how Defendants' fraud relates to the arbitration provisions at issue here. The Amended Complaint clarifies that Plaintiff reviewed a structured settlement transaction with his lawyer in mid-2011 that did not contain any arbitration provisions. Defendants then induced Plaintiff to fly to Florida

to sign onto a new deal that they represented was the same as the pending deal he had reviewed with counsel. Defendants advised Plaintiff against showing the new Florida documents to his lawyer, again representing that because the new deal was the same as the old deal, there was no need. Defendants then slipped arbitration provisions into the new deal without telling Plaintiff, and are now heard to argue that their duplicitous actions should be absolved, apparently because their fraud involved more than just the arbitration provision. That is not the standard under which established precedent reviews such fraudulent actions.[11] *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-404 (1967).

It is undisputed that Plaintiff did not knowingly consent to the arbitration provisions at issue, and the fact that Defendants' fraud touched on the both the arbitration and on other provisions related to the various contracts does not change the analysis; if defendants' fraud tainted the arbitration provision, led Plaintiff to give consent that was not intelligent and knowing, then that provision is unenforceable as against Plaintiff. *See Garten v. Kurth*, 265 F.3d 136, 143 (2d Cir. 2001) (the district court must first decide whether the connection between the

---

[11] One of Defendants' main arguments is that the Amended Complaint focuses largely on their fraud as a whole, rather than solely on the fraud as it relates to the arbitration provision. Defendants are correct that the original and Amended Complaint focus on the myriad types of fraud and the many ways that it resulted in Plaintiff losing payments that he would not have lost but for the fraud. Defendants' fraud, as it relates to the arbitration provision, makes up only one part of the overall series of activities outlined in the Amended Complaint. However, while the arbitration-related fraud is not the sole focus, it is an important, and very specifically pled portion of the Amended Complaint.

arbitration clause and the fraudulent actions of the defendant is sufficient to taint the arbitration clause).[12]

Defendants seem to be suggesting that the massive fraud with respect to their efforts to exercise dominion and control over Plaintiff's structured settlement annuity somehow makes fraudulent inducement with respect to the arbitration provision permissible because the fraud permeates the entire agreement rather than just the arbitration provision. In other words, teeny tiny fraud that touches only on an arbitration provision is the singular type of fraud that can vitiate Plaintiff's consent to arbitration. As Defendants would have it, fraudulent inducement with respect to an arbitration provision is permissible provided it is accompanied by other fraudulent acts. This position is preposterous and untenable.

## III.  THE ORDERS OBTAINED BY IMPERIAL IN THIS CASE ARE NOT QUALIFIED ORDERS WITHIN THE MEANING OF SECTION 5891 OF THE INTERNAL REVENUE CODE.

Section 5891 of the Internal Revenue Code imposes a punitive tax on certain structured settlement factoring transactions in order to protect payees from dissipating their settlement awards and to preserve certain tax treatment afforded to the parties under the Internal Revenue Code. The forty-percent excise tax is imposed on any party who acquires structured settlement payment rights through a factoring transaction, unless the factoring transaction is approved in advance by a "Qualified Order". Congress specifically intended to prevent any party subject to

---

[12] In *Garten*, plaintiff alleged defendant used the provisions of an arbitration clause to further a fraudulent scheme. The district court, citing to *Mosley*, ordered discovery on this claim, and then found that defendant used the threat of having to arbitrate rather than litigate as a bullying tactic designed to induce a favorable settlement  In that context, the issue was not whether defendants had induced plaintiff into agreeing to arbitrate through fraudulent misrepresentation, but rather, whether later using the threat of arbitration as a stick was sufficient to vitiate the earlier knowing agreement to arbitrate. Examining the issue of whether the defendant's fraudulent actions tainted the arbitration clause, the Second Circuit Court found that the defendant's actions related to arbitration were more in line with bullying that outright fraud, and provided an insufficient connection. *Garten,* 265 F.3d at 143.

the taxing authority of the United States from acquiring structured settlement payment rights unless they comply with the provisions of the Victims of Terrorism Tax Relief Act of 2001. Subsequent to the enactment of I.R.C. Section 5891, forty-eight states have adopted what are known as "structured settlement protection acts" designed to protect structured settlement payees from the unscrupulous actions of predatory factoring companies. *See 321 Henderson Receivables v. Martinez,* 816 N.Y.S. 2d 298 (Sup. Ct. New York County 2006); *In re: Olivarez*, 847 N.Y.S.2d 905, (Sup. Ct., Kings County 2007), citing *321 Henderson*).

All state structured settlement protection acts, including those of New York and Florida require a "Qualified Order" under an applicable state statute in order for a payee to validly transfer her structured settlement payment rights. According to Section 5891:

> [T]he term "qualified order" means a final order, judgment, or decree which—
> (A) finds that the transfer described in paragraph (1)—
> (i) does not contravene any Federal or State statute or the order of any court or responsible administrative authority, and
> (ii) is in the best interest of the payee, taking into account the welfare and support of the payee's dependents, and
>
> (B) is issued—
> (i) under the authority of an applicable State statute by an applicable State court, or
> (ii) by the responsible administrative authority (if any) which has exclusive jurisdiction over the underlying action or proceeding which was resolved by means of the structured settlement.
> (3) Applicable State statute
>
> For purposes of this section, the term "applicable State statute" means a statute providing for the entry of an order, judgment, or decree described in paragraph (2)(A) which is enacted by—
>
> (A) the State in which the payee of the structured settlement is domiciled, or
> (B) if there is no statute described in subparagraph (A), the State in which either the party to the structured settlement (including an assignee under a qualified assignment under section 130) or the person issuing the funding asset for the structured settlement is domiciled or has its principal place of business.

Any order purportedly obtained in a state court that does not meet the domicile conditions outlined in I.R.C. § 5891 is void ab initio.  As noted in the Amended Complaint, Plaintiff was domiciled in the State of New York at the time all of the November and December 2011 agreements were purportedly signed.  This fact, as clearly alleged in the Amended Complaint is not even subject to debate.  Plaintiff traveled to Florida twice. Once in late November, and once in late December where he stayed in hotels, "partied" with Defendant Levine and visited the Maserati dealership.  Defendant Imperial even wired funds to Plaintiff's account in New York just prior to New Year's Eve 2011.[13] Because Plaintiff was not a resident of Florida in November or December of 2011, those agreements cannot have led to a "qualified order" pursuant to Florida Structured Settlement Protection Act or I.R.C. Code 5891 because Plaintiff was domiciled in New York and not Florida. The Sumter County court further did not have jurisdiction to enter a Qualified Order based upon the petitions filed on behalf of an out of state petitioner.

More importantly, the agreements that Imperial Defendants are attempting to use as swords in this case are implausible on their face, were never explained to Plaintiff, were used by Defendant Imperial to take dominion and control over Plaintiff's structured settlement annuity and would not be enforceable at all, but for fraudulently obtained court orders.

Many recent cases have held that factoring companies cannot attempt to do via arbitration what federal and state law requires be done via court order. Factoring companies simply cannot do by arbitration what they were not permitted to do by court order.  The orders issued in Florida

---

[13] On December 2, 2011 Imperial Defendants wired $500 to Plaintiff's Flight Life Inc. account with an address in Highland Mills, NY; on December 28, 2011 Imperial Defendants wired $1000 to the same account; on December 30, 2011 Imperial Defendants sent wires in the amounts of $97,756.22, $81,348.58, $64,008.69 and $55,805.80 to the same account.

are void as Plaintiff was not domiciled in Florida and no decision by an arbitrator can restore their legitimacy. *See Symetra Life Ins. Co. v. Rapid Settlements*, Ltd. 509 F. Supp. 2d 809 (SD Tex. 2008) (purchaser's use of arbitration to effect transfer of structured settlement payment stream was contrary to the Texas structured settlement protection act); *Allstate Settlement Corp. v. Rapid Settlements, Ltd*., 2007 U.S. Dist. LEXIS 34136 (E.D. Pa. May 8, 2007) (arbitration award cannot be used to circumvent requirements of state structured settlement protection act) affirmed by *Allstate Settlement Corp. v. Rapid Settlements, Ltd.*, 559 F.3d 164, 2009 U.S. App. LEXIS 4127 (3d Cir. Pa. 2009); *Settlement Funding LLC v. RSL Funding LLC*, 3 F. Supp. 3d 590 (S.D. Tex. 2014) (arbitration provision in agreement not effective); *see also Pac. Life Ins. Co. v. Rapid Settlements, Ltd.,* 309 Fed. Appx. 459, 2009 U.S. App. LEXIS 2534 (2d Cir. N.Y. 2009) (affirming District Court's award of summary judgment declining to give effect to a Texas court's confirmation of an arbitration award); *In re Rapid Settlements, Ltd. v. BHG Structured Settlements, Inc.*, 202 S.W.3d 456, 2006 Tex. App. LEXIS 8149 (Tex. App. Beaumont 2006) (condition precedent to valid arbitration agreement is court order).

An order granted in Sumter County, Florida, in one of the very courts that Defendants filed petitions seeking to purchase Plaintiff's payments found that "The Florida Structured Settlement Protection Act ("SSPA")…preempts the Federal Arbitration Act ("FAA"). The SSPA guards recipients of structured settlements against abusive transfers and the FAA cannot be used to provide an end run around this secured line of protection." *In Re: Approval for Transfer of Structured Settlement Payment Rights u/a/b RSL Funding, LLC and Jerry M. Green*, No. 2011-CA-321, 2013 WL 6697803 (Fla. Cir. Ct. Dec. 18, 2013).

## IV.     THE FACTS OF THIS CASE REQUIRE THAT DEFENDANT'S MOTION BE DENIED.

The question that Defendants' motion to dismiss presents is whether their massive fraud was so successful that this Court will feel bound by precedent to honor an arbitration provision that was procured in the first instance by fraud.  Fortunately, no such precedent exists.  No cases hold that an individual tricked into signing a document that contains an arbitration provision that he has never seen, and had no reason to believe existed, can have actually consented to resolve future disputes through arbitration rather than court.  No cases stand for the proposition that where the plaintiff does not even know what arbitration is, as Defendants gloatingly point out, a Court should nonetheless conclude that Plaintiff consented to arbitration.  Finally, no case has or should ever stand for the proposition that where, as here, the Plaintiff is unaware of an arbitration provision as a direct result of Defendants' fraudulent conduct, such conduct does not taint that arbitration provision, and it should therefore be enforced.

In simple terms, there is no dispute that Plaintiff did not know what an arbitration provision was, and never discussed that provision with Imperial.  Defendants are, as a result, hard pressed to argue that he consented to that arbitration provision, and their motion to dismiss should therefore fail to pass beyond the threshold question, which requires proof of such consent.  Defendants are only left with arguments that point to Plaintiff's signatures on various documents which contain arbitration provisions.  However, while a signature can, in some instances, suggest consent, the facts currently before this Court do more than suggest otherwise.  They shine a light on a series of fraudulent activities that are the very reason why Plaintiff signed agreements that contained arbitration provisions without knowing they were there.  Case law asks this Court to examine whether any of the fraud alleged is related to the making of the agreement, and in particular, to the inclusion of an arbitration provision.  The Amended Complaint provides ample

evidence demonstrating how Defendants' fraud relates to and utterly taints the making of the agreement, and in particular, its arbitration provision. It is no accident that Plaintiff was unaware of the existence of that arbitration provision. Not long before signing the agreements at issue at a restaurant in Florida, Plaintiff had been represented by a real lawyer in New York. That lawyer had reviewed the agreements related to the pending New York transaction, and had discussed those terms with Plaintiff. Defendants then engaged in a series of activities which brought Plaintiff, alone to a coffee shop where he was told where to sign, and encouraged to forego any review of the documents content. These documents looked almost identical to the one Plaintiff had reviewed with his lawyer in New York. The deception worked, and Plaintiff signed agreements which now contained arbitration provisions that were absent from the New York transaction documents. Neither existing case law nor public policy supports enforcement of an arbitration provision under these circumstances. Even Section 2 of the Federal Arbitration Act does not contemplate enforcement of an arbitration provision in a contract where equitable reasons exist to revoke such contract. This is such a case.

## CONCLUSION

For the reasons stated herein, the Plaintiff respectfully requests this Court deny Defendants' motions to dismiss this matter.

Dated:  May 12, 2015

_____/s/_____
Edward S. Stone
Marc Davies (*pro hac vice*)
EDWARD STONE LAW P.C.
305 Broadway, Suite 1001
New York, NY 10007
eddie@edwardstonelaw.com
Telephone:  203-504-8425
Fax:  203-348-8477

*Attorneys for Plaintiff*
*Michael Lafontant*