**UNITED STATES DISTRICT COURT FOR**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHAEL LAFONTANT,<br><br>      Plaintiff,<br><br>    v.<br><br>WASHINGTON SQUARE FINANCIAL, LLC d/b/a IMPERIAL STRUCTURED SETTLEMENTS, IMPERIAL FINANCE & TRADING, LLC;<br>IMPERIAL HOLDINGS INC.; and ANDREW LEVINE<br><br>      Defendants. | Case No. 14-CIV-9895 |

## DECLARATION OF EDWARD S. STONE, ESQ. IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

I, Edward S. Stone, Esq. declare as follows:

1. I am a member of the law firm of Edward Stone Law P.C., counsel for Plaintiff Michael Lafontant and am duly admitted to practice before the United State District Court for the Southern District of New York.

2. I submit this declaration in opposition to Defendants Washington Square Financial, LLC d/b/a Imperial Structured Settlements ("Imperial Structured Settlements"), Imperial Finance & Trading, LLC ("Imperial Finance & Trading, LLC"), and Imperial Holdings, Inc. ("Imperial Holdings") (collectively the "Imperial Defendants") and Defendant Andrew Levine's motions to dismiss the instant action.

3. A true and correct copy of the November 14, 2011 Imperial agreement is attached hereto as Exhibit "A".

1

4. True and correct copies of pages from the Settlement Funding agreement in the 2011 Orange County transaction obtained from the Supreme Court, Orange County are attached hereto as Exhibit "B". The complete agreement is not attached as it was not available from the Supreme Court, Orange County Clerk.

6. A true and correct copy of the November 15, 2011 letter to Hon. Lawrence H. Ecker, Supreme Court of the State of New York, from Segal McCambridge Singer & Mahoney ("Segal McCambridge") counsel for Settlement Funding LLC obtained from the Supreme Court, Orange County is attached hereto as Exhibit "C".

7. A true and correct copy of Segal McCambridge's December 21, 2011 Notice of Discontinuance obtained from the Supreme Court, Orange County is attached hereto as Exhibit "D".

I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 12, 2015

*/s/ Edward S. Stone*
_____
Edward S. Stone
EDWARD STONE LAW, P.C.
305 Broadway, Suite 1001
New York, NY 10007
(203) 504-8425
Email: eddie@edwardstonelaw.com

*Attorneys for Plaintiff*

# EXHIBIT A

## ABSOLUTE SALE AND SECURITY AGREEMENT
### (THE "AGREEMENT")
### 11/14/2011

I, Michael Lafontant, ("I", "Me" or "Seller") residing at 814 SE 13th St Apt 4, Fort Lauderdale, FL 33316-2083 am entitled to certain periodic payments (the "Periodic Payments"), which I am receiving as a result of the settlement of a personal injury claim. The terms of the settlement are set forth in an agreement (the "Settlement Agreement"). The Periodic Payments are due to Me from Allstate Settlement Corporation (the "Settlement Obligor"). The Settlement Agreement provides for the Periodic Payments to be paid to Me through an annuity issued by Allstate Life Insurance Company of New York (the "Annuity Issuer), bearing Annuity Contract Number ▓▓▓▓▓▓▓▓▓▓.

A.   I agree to sell and transfer to Washington Square Financial, LLC dba Imperial Structured Settlements ("You "or "Purchaser") all of my rights to and interest in the following payments, which I am due to receive under the Settlement Agreement

> 216 monthly payments of $1,000.00 commencing on or about June 22, 2012, increasing 3.00% annually every June, and ending on or about May 22, 2030;

> **AND**

> 2 annual payments of $10,000.00 commencing on or about June 22, 2012 and ending on or about June 22, 2013;

> **AND**

> 1 lump sum payment of $150,000.00 due and payable on or about June 22, 2021;

> **AND**

> 1 lump sum payment of $253,914.00 due and payable on or about June 22, 2026 ("the Settlement Payments")

In consideration for selling and transferring to You my rights to receive these payments, You shall pay Me the sum of: $125,014.49 (the "Purchase Price").

B.   I hereby make the following unconditional representations, warranties and promises:

1. No one other than Me has any interest or claim of any kind or nature in, to or under the Settlement Payments.

2. I am not indebted to anyone that would in any way affect either the sale and transfer of the Settlement Payments referenced above or Purchaser's absolute rights to receive the Settlement Payments.

3. I agree to conduct my affairs so as to ensure that You receive the Settlement Payments exactly as described in Paragraph A above.

C. I understand and agree that I will be in breach of this Agreement if:

1. Any of the representations set forth in Paragraphs B (1) and B (2) at any time turn out to be untrue.

2. I fail to perform the promise set forth in Paragraph B (3) above.

3. Either the Settlement Obligor or the Annuity Issuer refuses or fails to make any one or more of the Settlement Payments as a result of any act by Me, my estate, my representatives, or any of my heirs.

4. I fail to promptly forward to You any of the Settlement Payments that might be received by Me from the Settlement Obligor or the Annuity Issuer after the sale and transfer to You has been completed.

5. I fail to fulfill any other obligation of mine under this Agreement.

D. Your obligation to complete this transaction, and to pay Me the Purchase Price depends upon the following conditions being satisfied unless waived by You:

1. You shall be satisfied, in Your sole reasonable judgment, that there are no claims or interests of any kind or nature that do or could affect rights to or interest in the Settlement Payments and/or prevent or interfere with Your receipt of the Settlement Payments on the dates and in the amounts described above Paragraph A, exactly in such amounts and at the times set forth therein.

2. You have received a final non-appealable court order and/or a signed acknowledgment from Settlement Obligor and Annuity Issuer satisfactory to the Purchaser in its sole discretion (collectively referred to as the "Order"), which You, in Your sole judgment, consider sufficient to recognize, authorize, and provide for the transfer by sale of the Settlement Payments (which may continue to be made out to my name) to You, Purchaser, and to insure that the Periodic Payments due on or after the day of the Order will be forwarded directly to You.

E. Security Interest. Seller and Purchaser intend that the sale of the Settlement Payments referenced above shall constitute a "sale" from the Seller to the Purchaser under applicable law, which sales are absolute and irrevocable and provide the Purchaser with all indicia and rights of ownership of the Settlement Payments. Neither the Seller nor the Purchaser intends the transactions contemplated hereunder to be, or for any purpose to be characterized as, loans from the Purchaser to the Seller secured by the Settlement Payments. If, notwithstanding the intention of the parties expressed above, any sale by the Seller to the Purchaser of the Settlement Payments shall be characterized as a secured loan and not a valid sale or absolute transfer or such sale or transfer shall for any reason be ineffective or unenforceable, then this Agreement shall be deemed to constitute a security agreement under the UCC and other applicable law in the rights to and interest in payments due to Me under the Settlement Agreement which I am selling to You under this Agreement. This security interest secures payment of the rights sold by Seller to Purchaser and the performance of Seller's obligations above. Seller authorizes Purchaser to direct any account debtor or obligor on an instrument, without limitation, Settlement Obligor or Annuity Issuer, to make periodic payments directly to Purchaser and as contemplated by the Uniform Commercial Code. Purchaser is

authorized to file a UCC-1 Financing Statement to perfect Purchaser's rights and the security interest intended to be created under this Agreement.

F.  Except as otherwise required by applicable statutory law, this Agreement shall be governed by and interpreted in accordance with the law of the state of residence of the Seller on the date of this Agreement.

### ARBITRATION

Any and all controversies, claims, disputes, rights, interests, suits or causes of action arising out of or relating to this Agreement and the negotiations related thereto, or the breach thereof, shall be settled by binding arbitration administered by the American Arbitration Association. The demand for arbitration shall be filed in writing with the other party to this Agreement and with the American Arbitration Association offices in your state of residence. The arbitration shall be held in the largest city in your state of residence. The arbitration shall be held before a single arbitrator selected in accordance with the Commercial Arbitration Rules of the American Arbitration Association in effect at the time that the demand for arbitration is filed. Discovery, specifically including interrogatories, production of documents and depositions shall be at the discretion of the arbitrator and to the extent permitted shall be conducted in accordance with, and governed by the Federal Rules of Civil Procedure.

A demand for arbitration shall be made within a reasonable time after the claim, dispute or other matter in question has arisen. In no event, shall the demand for arbitration be made after the date when institution of legal or equitable proceedings based on such claim, dispute or other matter in question, would be barred by the applicable statute of limitations.

No arbitration arising out of or relating to this Agreement shall include, by consolidation or joinder or in any other manner, an additional person or entity not a party to this Agreement, except by written consent of the parties hereto, containing a specific reference to this Agreement and signed by the entity sought to be joined. Consent to arbitration involving an additional person or entity shall not constitute consent to arbitration of any claim, dispute or other matter in question not described in the written consent or with a person or entity not named or described therein. The foregoing agreement to arbitrate and other agreements to arbitrate with an additional person or entity duly consented to by parties to this Agreement, shall be specifically enforceable in accordance with applicable law in any court having jurisdiction thereof.

The award rendered by the arbitrator shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof. Such arbitrator shall identify the substantially prevailing party and shall include legal fees and expenses for the substantially prevailing party.

This provision does not apply to the extent inconsistent with applicable state law regarding the transfer of structured settlement payments. In such case any disputes between the parties will be governed in accordance with the laws of the domicile state of the payee and the domicile state of the payee is the proper venue.

G.  I hereby grant You an irrevocable Power of Attorney with full powers of substitution to do all acts and things that I might do regarding the Settlement Payments, and any and all rights I have

under the Settlement Agreement. I understand and intend that by doing so, I am giving You all of the power and right I currently have under the Settlement Agreement to endorse checks, drafts or other instruments, to alter, add and change payment instructions and/or beneficiary designations, and/or to perform any other act in my name that in Your sole discretion as my Attorney-in-Fact is necessary or expedient for You to obtain all of the benefits of the bargain contemplated by this transaction. This power of attorney is coupled with an interest and shall survive my death or disability.

H. Payments Received by Party Other Than the Party Intended to Receive the Payments.

1. If prior to the completion of the transfer provided for in this Agreement, I receive any of the Settlement Payments or any portion thereof, I understand and agree an equal amount shall be deducted from the Purchase Price, and the Purchase Price shall be reduced in the same amount as those payments, and that the terms of this Agreement regarding the payments to be assigned, shall be treated as amended to reflect for the adjusted amount.

2. In the event You receive or otherwise come into possession of any of the Periodic Payment(s) or portion(s) thereof which are not included in the payments being absolutely sold to You pursuant to this Agreement, You agree to forward such amount(s) to Me at the address set forth above within seven (7) days of receipt of such amount(s).

I. You shall be entitled to, and are authorized by Me to discharge any liens or adverse claims against Me or any of the Settlement Payments, whether or not such adverse claims are disclosed, and You are further authorized by Me, provided You furnish prior written notice to Me, to pay any and all amounts necessary or if the Purchase Price has been deposited into an escrow account, to instruct the escrow agent to pay any and all amounts necessary to discharge such liens or other adverse claims. I understand and agree that any such amounts that You pay are payments You are making on my behalf and shall reduce the Purchase Price. Adverse claims may include disclosed amounts to be deducted by You from the Purchase Price to pay You, as servicer for Washington Square Financial, LLC dba Imperial Structured Settlements, to enable Me to obtain Washington Square Financial, LLC dba Imperial Structured Settlements release of its encumbrance on a portion of the Settlement Payments relating to a prior transfer transaction(s) that occurred before the enactment of the applicable statue ("Transfer Act") regulating such transfers. I understand and acknowledge that the law currently in effect requires that such encumbrance be released In order to complete the transfer that is the subject of this Agreement.

J. This Agreement shall take effect on the date it is signed by Me (the Seller) or on such later date prescribed by applicable law.

K. All disclosure statements I receive from You in connection with this transaction are a material part of this Agreement and shall be considered part of the terms of this Agreement and shall be read as if the contents of the disclosure statement were set forth in full in the body of this Agreement.

L. I know that it will take some time for the Settlement Obligor and the Annuity Issuer to receive and process the court order once it is granted. I would like to receive the Purchase Price or a portion thereof as soon as possible thereafter. Accordingly, I hereby request Purchaser to pay Me a portion of the Purchase Price as soon as possible after the court order is granted and authorize Purchaser to hold in escrow an amount it deems necessary or advisable from the Purchase Price (the "Escrow Amount") until all conditions precedent have been satisfied, including, without limitation, the receipt by

Purchaser of the Settlement Obligor and the Annuity Issuer's acknowledgment of the terms of the court order in writing and their agreement to honor and comply with same. At such time or earlier as Purchaser may determine, I understand that Purchaser will send the Escrow Amount to Me minus any Settlement Payments that the Annuity Issuer and/or Settlement Obligor sent to Me while the Settlement Obligor and the Annuity Issuer were processing the court order.

M. I have the right to cancel this Agreement, without penalty or further obligation, within the first three business days after the date the Agreement is signed, by providing You with written notice within three (3) day period, as provided for in Paragraph N.

N. All notices, demands, and other communications required or permitted under this Agreement must be made in writing, and delivered by hand, via the United States Post Office, Certified Mail, Return Receipt Requested, or by overnight delivery service, to You or Me as the recipient at the address set forth in the beginning of this Agreement and must be evidenced by a receipt showing time, date of delivery and the person receiving the delivery.

In witness whereof I hereunto set my hand.

_____
Michael Lafontant

STATE OF _____Flor____
COUNTY OR CITY OF ___Mia___

On the _2.6_ day of _Nov_, in the year _11_ before me, the undersigned, personally appear Michael Lafontant personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies) and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary

PLEASE DO NOT SIGN THIS
DOCUMENT UNTIL 11/14/2011

My Commission expires on: _2/15/14_
Accepted:

Washington Square Financial, LLC dba Imperial Structured Settlements

_____

Title: ANTONY MITCHELL, CEO
Date: 11/21/11

SHARNNELL S SPENCER
MY COMMISSION # DD963104
EXPIRES February 16, 2014



## ABSOLUTE ASSIGNMENT AGREEMENT
### (THE "AGREEMENT")

I, Michael Lafontant, ("I", "Me" or "Assignor") residing at ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ am entitled to 5 annual payments each in the amount of $40,000.00 commencing on June 22, 2009 through and including June 22, 2013   360 monthly payments each in the amount of $6,250.00 commencing on June 22, 2009 increasing 3.00% every 12 payments through and including May 22, 2039 and for life thereafter. Lump sum payments as follows: $100,000.00 due on June 22, 2016; $150,000.00 due on June 22, 2021; and $263,914.00 due on June 22, 2026. (the "Periodic Payments"), which I am receiving as the result of the settlement of a personal injury claim. The terms of the settlement are set forth in an agreement (the "Settlement Agreement"). The Periodic Payments are due to me from Allstate Settlement Corporation (the "Settlement Obligor")   The Settlement Agreement provides for the Periodic Payments to be paid to me through an annuity issued by Allstate Life Insurance Company of NY (the "Annuity Issuer"), Annuity Contract Number ▮▮▮▮▮▮▮▮▮▮

A.   I agree to sell to Settlement Funding of New York, L.L.C. ("you" or "Assignee") and its assigns through an assignment, all of my rights to and interest in the following payments, which I am due to receive under the Settlement Agreement:

> 240 monthly payments each in the amount of $1,550.00 commencing on June 22, 2014  increasing 3.00% every 12 payments through and including May 22, 2034. Lump sum payments as follows: $100,000.00 due on or about June 22, 2021; and $125,000.00 due on or about June 22, 2026. (the "Assigned Payments"); and

In return (or compensation) for selling and assigning to you my rights to receive these payments, you shall pay me the sum of: $112,200.00 (the "Assignment Price").

B.   In order to induce you to proceed with this transaction, I make to you the following unconditional representations, warranties and promises:

   1. No one other than me has any interest or claim of any kind or nature in, to or under the Assigned Payments.

   2. I am not indebted to anyone that would in any way affect either the assignment of the Assigned Payments referenced above or Assignee's absolute rights to receive the Assigned Payments.

   3. I agree to conduct my affairs so as to ensure that you receive these payments exactly in the amounts, and exactly at the times stated in paragraph A above.

C.   I understand and agree that I will be in breach of this Absolute Assignment Agreement if:

   1. Any of the representations set forth in Paragraphs B (1) and B (2) at any time turn out to be untrue

   2. I fail to perform the promise set forth in Paragraph B (3) above.

   3  Either the Settlement Obligor or the Annuity Issuer refuses or fails to make any one or more of the Assigned Payments as a result of any act by me, my estate, my representatives, or any of my heirs

    4.   I fail to promptly forward to you any of the Assigned Payments that might be received by me from Settlement Obligor or Annuity Issuer after the Assignment to you has been completed

    5.   I fail to fulfill any other obligation of mine under this Agreement.

D.   Your obligation to complete this transaction, and to pay me the Assignment Price depends upon the following conditions being satisfied, unless waived by you.

    1.   You shall be satisfied, in your sole reasonable judgment, that there are no claims or interests of any kind or nature that do or could affect your rights to or interest in the Assigned Payments and/or prevent or interfere with your receipt of the Assigned Payments on the dates and in the amounts described above in Paragraph A, exactly in such amounts and at the times set forth therein.

    2.   You have received a final non-appealable court order and/or a signed acknowledgment from Settlement Obligor and Annuity Issuer (collectively referred to as the "Order"), which you, in your sole judgment, consider sufficient to recognize, authorize, and provide for the transfer by assignment of the Assigned Payments (which may continue to be made out to my name) to you, Assignee, and to insure that the Periodic Payments due on or after the day of the Order will be forwarded directly to you

    3.   Assignee shall have received final financing approval from applicable funding source(s).

E.   **Security Interest.** You and I intend this Agreement to create a security interest in the rights to and interest in the Assigned Payments which I am assigning to you under this Transfer Agreement as "General Intangibles" to the extent permitted under that version of Article 9 of the Uniform Commercial Code (governing Secured Transactions) that is in effect in the state designated in Paragraph F below. This Agreement shall also function as a security agreement. This security interest secures payment of the rights assigned by me to you and the performance of my obligations under Paragraph B above. I authorize you to direct any account debtor or obligor on an instrument, including, without limitation, Settlement Obligor or Annuity Issuer, to make periodic payments directly to you and as contemplated by the Uniform Commercial Code. You (Assignee) are authorized to file a UCC-1 Financing Statement to perfect your rights and the security interest intended to be created under this Agreement

F   Except as otherwise required by applicable statutory law, this Agreement shall be governed by and interpreted in accordance with the laws of the State of New York.

G.   I hereby grant to you an Irrevocable Power of Attorney with full powers of substitution to do all acts and things that I might do regarding the Assigned Payments, and any and all rights I have under the Settlement Agreement with respect to the Assigned Payments. I understand and intend that by doing so, I am giving to you all of the power and right I currently have under the Settlement Agreement with respect to the Assigned Payments, to endorse checks, drafts or other instruments, to alter, edit and change payment instructions and/or beneficiary designations, and/or to perform any other act in my name that, in your sole judgment as my Attorney-in-Fact, you feel is necessary or expedient for you to obtain all of the benefits of the bargain contemplated by this transaction. This power of attorney is coupled with an interest and shall survive my death or disability

H.   **Payments Received by the Party Other Than the Party Intended to Receive the Payments.**

    1   If, prior to the completion of the transfer provided for in this Agreement, I receive any of the Assigned Payments or any portion thereof, I understand and agree an equal amount shall be deducted from the Assignment Price, and the Assignment Price shall be reduced in the same amount as these payments, and that the terms of this Agreement regarding the

payments to be assigned, shall be treated as amended to reflect for the adjusted amount

2. In the event you receive or otherwise come into possession of any of the Periodic Payment(s) or portion(s) of such a payment or payments that are not included in the payments being absolutely assigned to you, you agree to forward such amount(s) to me at the address set forth above within seven (7) days of receipt of such amount(s).

I. You shall be entitled to, and are authorized by me to discharge any liens or adverse claims against me or any of the Assigned Payments, whether or not such adverse claims are disclosed, and you are further authorized by me, provided you provide me with prior written notice, to pay any and all amounts necessary or, if the Assignment Price has been deposited into an escrow account, to instruct the escrow agent to pay any and all amounts necessary to discharge such liens or other adverse claims. I understand and agree that any such amounts that you pay are payments you are making on my behalf and shall be charged against and reduce what I actually receive out of the proceeds of the Assignment Price. Adverse claims may include disclosed amounts to be deducted by you from the Assignment Price to pay you, as servicer for Peachtree Finance Company, LLC, to enable me to obtain Peachtree Finance Company, LLC's release of its encumbrance on a portion of the Assigned Payments relating to a prior transfer transaction(s) that occurred before the enactment of any statute ("Transfer Act") regulating such transfers. I understand and acknowledge that the law now in effect requires that such encumbrance be released in order to complete the transfer that is the subject of this Agreement

J. This Agreement shall take effect on the date it is signed by me (the Assignor) or on such later date prescribed by applicable statutory law

K. All disclosure statements I receive from you in connection with this transaction are to be considered as incorporated into, and form part of the terms of this Agreement and shall be read as if the contents of the disclosure statements were set forth in full in the body of this agreement

L. I know that it will take some time for the Settlement Obligor and the Annuity Issuer to receive and process the court order once it is granted. I would like to receive the Assignment Price or a portion thereof as soon as possible thereafter Accordingly, I hereby request Assignee to pay me a portion of the Assignment Price as soon as possible after the court order is granted and authorize Assignee to hold in escrow an amount it deems necessary or advisable from the Assignment Price (the "Escrow Amount") until all conditions precedent have been satisfied, including, without limitation, the receipt by Assignee of the Settlement Obligor and the Annuity Issuer's acknowledgment of the terms of the court order in writing and their agreement to honor and comply with same. At such time or earlier as Assignee may determine, I understand that Assignee will send the Escrow Amount to me minus any Assigned Payments that the Annuity Issuer and/or Settlement Obligor sent to me while the Settlement Obligor and the Annuity Issuer were processing the court order.

M. I have the right to cancel this transfer agreement, without penalty or further obligation, within the first three business days after the date the agreement is signed, by providing you with written notice within the three (3) day period, as provided for in the next paragraph.





**SegalMcCambridge**
Segal McCambridge Singer & Mahoney

Ted Eder
Direct (212) 651-7406
teder@smsm.com

November 15, 2011

**VIA OVERNIGHT/FEDERAL EXPRESS**

Hon. Lawrence H. Ecker
Supreme Court of the State of New York
Orange County Government Center
285 Main Street
Goshen, New York 10924

Re: In the Matter of the Application of Settlement Funding of New York, L.L.C. For Approval of a Transfer of a Structured Settlement Payment Right of MICHAEL LAFONTANT to Settlement Funding of New York, L.L.C.

Index No.: 5151/11
Return Date: November 16, 2011

Dear Justice Ecker:

Our office represents Settlement Funding LLC in the above referenced matter. As per your instructions, please find enclosed, a statement from Michael Lafontant's entertainment attorney including the operations budget for Mr. Lafontant's recording business (Exhibit "A").

This was the final piece of information sought by Your Honor in connection with this matter. We respectfully request that our application for the transfer of structured settlement funds be approved.

Thank you for your time and thoughtful consideration in this matter.

Very truly yours,

Ted Eder

Enclosures

cc: Michael Lafontant
12 Redwood Drive
Highland Mills, NY 10930-2813

Allstate Life Insurance Company of NY
100 Motor Parkway, Suite 132
Hauppauge, NY 11788-5107

Allstate Settlement Corporation
Allstate Financial, Life and Annuity Claims
3100 Sanders Rd. N3A
Northbrook, IL 60062



RECEIVED
NOV 17 2011
CHAMBERS OF
HON. LAWRENCE H. ECKER

2541726

# ROBERT A. CELESTIN, ESQ.
Law Offices
250 West 57th Street, Suite 2331
New York, New York 10107
(212) 262-1103
(212) 262-1173 (fax)
bcelestin@nyct.net
www.raclawfirm.com

<u>Via Hand Delivery</u>                                          November 14, 2011
HON. LAWRENCE H. ECKER
Supreme Court of the State of New York
Orange County Government Center
285 Main Street
Goshen, New York 10924

      RE: **In the Matter of the Application of SETTLEMENT FUNDING OF NEW YORK, L.L.C, Petitioner, For Approval of a Transfer of Structured Settlement Payment Right of MICHAEL J. LAFONTANT a/k/a MICHAEL LAFONTANT pursuant to Article 5, Title 17 of the New York General Obligation Law/Index No.: 5151/11**

Dear Honorable Justice Ecker:

    I am legal counsel to Mr. LaFontant and have been retained as such since 2010.

    I incorporated Mr. LaFontant's recording company, Flight Life, Inc. ("Flight Life") in 2010 and have advised and counseled Mr. LaFontant on various legal and business issues related to Flight Life. I have practiced primarily in the area of music law for over twenty-five (25) years and have represented recording artists, record labels, managers and producers. Additionally, I have also been a personal manager to recording artists and presently own and operate an independent record label.

    Mr. LaFontant has advised me of the above-referenced proceeding and the fact that he is requesting a cash advance of One Hundred Thirty Thousand ($130,000.00) Dollars from Settlement Funding of New York, LLC ("Settlement Funding") in order to, among other things, fund the operating expenses of Flight Life especially as it relates to the signing, recording, promotion and marketing of recording artists signed to Flight Life.

    I have advised Mr. LaFontant regarding the inherent risks and rewards associated with releasing an album project and have assisted him in drafting the operating budget attached hereto

D:\Michael LaFontant\Flight Life\Ecker Lttr

as Exhibit "A." His goal is to release one (and possibly two) album(s) in the spring of 2012 embodying the performances of recording artist Malcolm Joseph professionally known as "Rells."

I feel confident that Mr. LaFontant clearly understands the risks involved in this endeavor and further feel that the operating budget will be utilized appropriately.

If you have any other questions, please feel free to call me.

Sincerely,

Robert A. Celestin, Esq.

cc: Michael LaFontant (via email)
Theodore Eder, Esq. (via email)

D:\Michael LaFontant\Flight Life\Ecker Lttr

# EXHIBIT "A"

# FLIGHT LIFE RECORDS, INC.

# OPERATING BUDGET

1. Artists/Recording/Mixing Producer Costs:                                $30,000.00

2. Marketing/Promotions/Music Videos:

   a. Publicity (5 months @ $1,500.00):                                    $ 7,500.00
   b. Online Marketing (5 months @ $3,000.00):                             $15,000.00
   c. Music Videos (6 @ $1,000.00):                                        $ 6,000.00
   d. Merchandising: (T-Shirts):                                           $ 5,000.00

3. Radio Promotion:

   a. College Radio (5 months @ $1,000.00):                                $ 5,000.00
   b. Regional Mix Show Radio Promo (5 months @ $2,500.00):                $12,500.00

4. Album Artwork/Graphics:                                                 $ 3,000.00

5. Website Construction/Upkeep:                                            $ 2,000.00

6. Legal/Consulting Fees:                                                  $10,000.00

7. Accountant:                                                             $ 5,000.00

8. Travel/Lodging Expenses:                                                $ 9,000.00

**TOTAL:**                                                                 **$110,000.00**

# EXHIBIT D



Vanessa Nicholas
Legal Assistant
Direct (212) 651-7456
vnicholas@smsm.com

December 21, 2011

**VIA FIRST CLASS MAIL**

Supreme Court of the State of New York
Orange County Government Center
255 Main Street
Goshen, New York 10924

    **Re: In the Matter of the Application of Settlement Funding of New York, L.L.C. For Approval of a Transfer of a Structured Settlement Payment Right of MICHAEL LAFONTANT to Settlement Funding of New York, L.L.C.**

    **Index No.: 5151/11**

Dear Sir/Madam:

    Our office represents Settlement Funding LLC in the above referenced matter. Please file the attached Notice of Discontinuance and return a filed stamped copy in the self addressed stamped envelope enclosed. Please also find a check in the amount of $35.00 for filing of same.

    Thank you for your time and thoughtful consideration in this matter.

                            Very truly yours,

                            Vanessa Nicholas

Enclosures

cc:    Michael Lafontant
        12 Redwood Drive
        Highland Mills, NY 10930-2813

        Allstate Life Insurance Company of NY
        100 Motor Parkway, Suite 132
        Hauppauge, NY 11788-5107

        Allstate Settlement Corporation
        Allstate Financial, Life and Annuity Claims
        3100 Sanders Rd. N3A
        Northbrook, IL 60062

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ORANGE

---

In the Matter of the Application of
SETTLEMENT FUNDING OF NEW YORK, L.L.C.,

Petitioner,

For Approval of a Transfer of a Structured Settlement Payment Right of MICHAEL LAFONTANT pursuant to Article 5, Title 17 of the New York General Obligations Law

---

Index No.: 5151/11

**NOTICE OF DISCONTINUANCE**

Please take notice that the undersigned counsel for the petitioner, that whereas no party hereto is an infant, incompetent person for who a committee has been appointed or conservatee and no person not a party has an interest in the subject matter of the action, the above entitled action be, and the same hereby is discontinued with prejudice and without costs. This notice may be filed without further notice with the Clerk of the Court.

Dated: New York, New York
December 21, 2011

_____
Ted Eder, Esq.
SEGAL McCAMBRIDGE SINGER & MAHONEY, LTD.
Attorneys for Petitioner,
Settlement Funding of New York, L.L.C.
850 Third Avenue, Suite 1100
New York, New York 10022
(212) 651-7500

DATE 1-3-12
ACTION TAKEN ☑
NOT ON CALENDAR ☐
EILEEN STANFORD
CHIEF CLERK

2011 DEC 28 PM 2:30

2592743